Maurice Klein, Trustee in Bankruptcy of Walter V.
Fackler, Appellant, v. Chicago Title and Trust
Company, Appellee.

Gen. No. 39,651.

Opinion filed May 3, 1938.

JOHN A. BROWN, ROSS LANGDON and DALE A. LETTS, all of Chicago, for appellant.

GEORGE GILLETTE, ELMER M. LEESMAN and JOHN MANN, all of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Walter V. Fackler filed a complaint in the circuit court against Chicago Title & Trust Company seeking discovery and an accounting against defendant under an alleged constructive trust. Shortly thereafter an involuntary petition in bankruptcy was filed against him in the United States District Court, and he was adjudicated a bankrupt. Thereupon, Maurice Klein, who was appointed trustee of Fackler's estate, procured an order in the district court allowing him to be substituted as complainant in this proceeding, and the cause has since been carried on by the trustee. Defendant's motion to dismiss the complaint was allowed by the chancellor, the bill dismissed for want of equity and Klein, as trustee in bankruptcy, prosecutes this appeal.

The complaint, which is quite voluminuous, may be summarized as follows: Fackler, a lawyer admitted to the Illinois bar in 1917, became a salaried employee of Chicago Title & Trust Company in 1925, and continued in its employ until June, 1932. Chicago Title & Trust Company is alleged to be a corporation, chartered to engage in, among other things, the guaranteeing of titles, to act as escrowe, assignee and depositary, and to accept and execute any and all trusts.

During the period of his employment Fackler was assigned to two different departments of defendant corporation; first, to the guaranty department, and afterward, in January, 1928, to the company's legal department. While employed in the guaranty department he was engaged in examining titles and furnishing legal opinions thereon to the general public, for which defendant charged and was paid attorneys' fees.

In January, 1928, he ceased to work in the guaranty department and was assigned to the law department where his activities are alleged to have included (1) the making and furnishing to the public, which was charged and paid defendant corporation fees for legal opinions upon all subjects; (2) furnishing opinions and giving legal advice to the paying public in the prosecution or defense of suits at law or in equity; and (3) conducting and carrying on chancery litigation, and furnishing legal services to the public. Upon his transfer to the legal department he assumed complete charge of the foregoing activities, and "created, drew and established the legal forms, precedents, practice and procedure" used in proceedings conducted through that department.

It is alleged that while employed in the law department certain suits were instituted for the foreclosure of mortgage trust deeds, in which defendant corporation was either trustee or successor trustee; that in these suits defendant in its capacity as trustee was the complainant; that various attorneys and solicitors were retained to represent the complainant trustee in these suits, and that Fackler, as a member of the law department, frequently entered his appearance with other attorneys whom he advised and assisted in the preparation of these foreclosures and followed the proceedings; that the decrees thereafter entered in these cases fixed certain sums as allowances to complainant trustee to recover expenses incurred by it for solici-

tors' fees, and it is charged that any such allowance collected by defendant or "by it collected and by it distributed as attorneys' and solicitors' fees to various or other attorneys and solicitors in such cases . . . belong of right to your orator."

It is alleged that the legal work relating to the foreclosure of bonds and trust deeds and the handling of matters and details in connection therewith, and especially in connection with the appointment and work of bondholders' committees, were during the time of Fackler's employment by defendant turned over by it to him for the performance of legal services in all or most instances in substantially the following manner or under the following circumstances: Upon the appointment or creation of a bondholders' committee, defendant or some of its officers appointed an attorney for the committee, who thereafter made a demand upon the trustee, usually the defendant, to accelerate the maturity of the bonds secured by the trust deed, and after such demand the committee or its attorney requested defendant, as trustee, to file foreclosure proceedings; that thereafter bills to foreclose were prepared and filed, by or under Fackler's orders and directions; that it was one of Fackler's duties, whenever possible, to secure the appointment of defendant as receiver in these various foreclosure proceedings, to procure orders of court for the appointment of attorneys and solicitors for the receiver and to secure the recommendations of masters and allowance by courts for solicitors' and receivers' fees, as well as fees for the services of defendant as trustee or successor trustee; and that all bills for foreclosure of bond or note issues were when drawn submitted to Fackler for his examination and approval before they were filed; that he made examinations and rendered legal opinions, approval and corrections, as an attorney at law, on matters so submitted to him; that he signed

various bills to foreclose as attorney and solicitor of record for defendant, along with other attorneys retained by defendant, attended court hearings and represented defendant as complainant on motions presented by him in court from time to time; that he attended the foreclosure sales, made bids on behalf of bondholders in the name of defendant, as trustee, drafted the forms and reports of sales used by the masters and their reports of sales and distribution to the courts in these various proceedings, examined and passed upon the legality and propriety of those reports, and gave legal opinions and approved the accounts and orders of distribution, testified in various proceedings on behalf of the bondholders' committees with reference to the reasonable value of solicitors' fees and procured the findings of the masters and approval of their reports by the courts to such sums as were found to be due and decreed to defendant for its solicitors' fees; that such work as he performed as an attorney at law and solicitor required the time, legal ability, skill and attention of an attorney; that defendant furnished him desk room without charge and paid him a salary for services other than legal services on behalf of defendant; that securing Fackler's services to conduct or carry on such litigation was within the corporate powers of defendant, but that joining another attorney or attorneys, designated by it as solicitors for or to represent the bondholders' committees as solicitors for the complainant with Fackler, was illegal and fraudulent and contrary to the legal purposes and objects for which it was incorporated and contrary to public policy.

Complainant sets forth sec. 1, ch. 13, Smith-Hurd Ill. Stat. 1933 [Cahill's Ill. St. 1933, ch. 13, ¶ 1], relating to the provisions of the statute making it unlawful for one to practice law without a license and makes reference to other statutes prohibiting corporations

from practicing law, and alleges that defendant, either individually or as trustee, never was, could not be, and is not licensed or qualified to be licensed to practice law or act as an attorney or counsellor at law or to collect the fees or emoluments payable for legal services, or by its charter authorized or empowered to receive fees for any services by it rendered as an attorney or counsellor at law; that the advice, opinions and service rendered by Fackler as attorney on behalf of defendant, as well as for the various committees created under defendant's direction, were services of an attorney licensed in accordance with the laws of Illinois and as such he is entitled to receive and be paid the sums of money allowed in the various cases and proceedings for services rendered by him to defendant, as complainant, without any deduction or split from his fees; that he is likewise entitled to have his solicitor's fees, which were allowed by the courts to defendant for its solicitors' fees, and that it was and is illegal and against public policy for defendant to hold, claim or keep such fees or to make any disposition thereof other than by payment to Fackler.

It is alleged that in equity and good conscience defendant should be compelled to account to Fackler for all sums of money it received during all the time that he rendered services on behalf of defendant; that he did not keep any itemized statement of his charges, but he avers that upon a just and proper statement of account it will appear that defendant has received for his use and benefit, for opinions of title and legal services furnished by him as attorney at law upward of $500,000.

The complaint does not allege that, under his contract of employment with defendant, Fackler was to be paid any compensation or fees for any of the services mentioned, other than his usual salary, which he received regularly from defendant; nor does it allege the

existence of any separate contract or contracts whereby he was to be entitled to receive from defendant, in addition to his usual salary, separate attorney's fees in addition to those incurred by defendant to be paid by it to its outside counsel, who represented it as mortgage trustee in the foreclosure suits mentioned. It is not alleged that any such additional fees were ever allowed the defendant company in such foreclosure suits, to reimburse it for expenses incurred by it by reason of any services of members of its law department; nor is there an allegation of any contract or agreement between Fackler and defendant and other counsel for the division of fees between him and such other counsel.

Briefly summarized the gravamen of the complaint is that defendant corporation is charged with the unauthorized practice of law; that the various acts specified in the complaint were consummated through the instrumentality of plaintiff, a licensed attorney, that as a result of such unauthorized practice the defendant realized substantial profits; and that Fackler, notwithstanding the fact that he was the agency through which such unauthorized transactions are charged to have been consummated, is nevertheless entitled to seek the aid of the court to compel an accounting of the moneys and profits he claims resulted from these unauthorized transactions.

Chicago Title & Trust Company's motion to dismiss the complaint, thereby challenging the sufficiency thereof, under the procedure prescribed by the Civil Practice Act, specifies nine separate reasons in support of the motion, among which are (1) that the complaint fails to set forth the terms and conditions of any contract entitling plaintiff to the attorney's fees sought; (2) that it failed to allege any indebtedness due from the defendant to plaintiff; (3) that the allegations made, if true, showed Fackler's participation in trans-

actions in violation of law and against public policy; and (4) that if any contract had existed for the performance of services of the character alleged in the complaint and payment of compensation therefor, the contract would be illegal. Under the provisions of the Civil Practice Act a motion to dismiss takes the place of a demurrer as formerly employed. (Sec. 45, par. 169, ch. 110, Civil Practice Act, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.045].) It does not admit conclusions or inferences drawn by the pleader (*Lietzman v. Radio Broadcasting Station W. C. F. L.*, 282 Ill. App. 203, 208), and under the authorities of this State pleadings are to be construed strictly against the plaintiff, except only as to matters of form, and the absence of material and essential allegations in the complaint may properly be raised by motions to dismiss. (*Lewis v. Continental Assur. Co.*, 289 Ill. App. 114, 119.)

Although various reasons are urged for reversal of the judgment, the principal questions presented for determination are (1) whether Fackler is entitled to recover attorney's fees upon the theory of a constructive trust in the absence of any allegations in the complaint showing that his claim is predicated upon any contract, express or implied, and (2) whether assuming the acts with which defendant is charged to have been unlawful and against public policy, a court will lend its aid to enable one party to the unlawful enterprise to compel an accounting from another party to such an enterprise of moneys or profits resulting therefrom.

Considering the first of these propositions the complaint, when reduced to its simplest terms, must be regarded as a suit seeking to recover attorney's fees. Plaintiff's counsel concede that ''there is no averment in the complaint of a contract, and this suit is not based on a contract, but on a constructive trust,'' and in fact

no attempt is made by plaintiff to allege a contract, express or implied, upon which any contractual relationship for services could be predicated. The question therefore arises whether, in the absence of an agreement, plaintiff is entitled to an accounting and to the recovery of fees. The law is well settled that an attorney's lien for professional services must rest upon the terms of a contract of employment, either express or implied, made with the party sought to be charged. Although a lawyer is regarded as an officer of the court his fees are not fixed by statute and he is at full liberty to contract with those whom he represents in the matter of his fees or charges for professional services. The liability to pay for legal services stands upon precisely the same footing as other agreements. (*Chicago & Southern Traction Co. v. Flaherty,* 222 Ill. 67, 70.) There are cases holding in effect that corporations may be bound by contracts made by their agents though not under seal, and also on implied contracts to be deduced from corporate acts without either a vote or deed or writing (Kent's Commentaries, vol. 2, sec. 291) ; also decisions holding that, ''acquiescence by a client in his attorney's conduct may supply the place of a request to act, provided the case was such that the client might reasonably know that he would be expected to pay for the service,'' (6 Corpus Juris, § 301, p. 730) ; that it is not essential to the right of recovery by an attorney against his client for professional services that there should be shown an express request, but if the services were rendered under such circumstances as will reasonably imply they were performed with the assent and upon the request of such a party, a recovery may be had. (*Cooper & Moss v. Hamilton,* 52 Ill. 119, 123.) But the doctrine enunciated by these authorities rests generally upon the theory of an implied agreement. In order to permit recovery for services in this case the complaint would neces-

sarily have to allege some express or implied contract, or facts from which it could be reasonably inferred that defendant had obligated itself to compensate Fackler in addition to his regular salary as its employee. The bill is devoid of any allegations from which such an obligation might arise. The only contract plaintiff shows in his complaint is the contract of employment under which the relationship between Fackler and defendant had its inception, and although the terms of that agreement are not specifically set forth, the complaint clearly alleges that there was an express contract of employment which necessarily excludes the existence of an implied agreement. (*Walker v. Brown,* 28 Ill. 378.) It would seem to follow, therefore, that without some showing of an agreement between Fackler and defendant, whereby he was to become entitled to attorney's fees other than his salary, he has not made out any claim of right to receive them and defendant cannot be said to have collected any moneys for Fackler's use and benefit in the absence of averments of necessary facts to show that Fackler was entitled to such moneys. Plaintiff's principal claim for an accounting is predicated upon fees allowed defendant in foreclosure proceedings to compensate it for expenses incurred in retaining outside counsel whom Fackler is alleged to have assisted in following these proceedings. In retaining outside counsel defendant incurred an obligation to pay them. Allowances of solicitors' fees in foreclosure proceedings are made direct to the complainant and not to attorneys or for their use and benefit, and attorneys so retained have no interest in the fees awarded the complainant. (*Montgomery v. Dime Savings & Trust Bank Co.,* 290 Ill. 407.) In that case it was held that where solicitors' fees were allowed, whether by statute or otherwise, the allowance may be made only to a party or parties to the litigation and not to the solicitors performing the

services, and Mr. Justice Cartwright pointed out that in a suit by a wife for separate maintenance the statute authorized the court to make an allowance to enable her to prosecute her suit, but an application for such allowance must be in her name and made to her and not to her solicitor. Consequently since outside attorneys who had a contract or implied agreement with defendant for fees could not fairly contend that the money paid to Chicago Title & Trust Company was collected for their use and benefit, Fackler, who concedes there was no contract or agreement between him and defendant, cannot fairly claim that these fees were collected for his use and benefit.

Although it is conceded that complainant makes no allegations of an express or implied agreement for fees, he argues that he is entitled to recover from defendant on the theory of a constructive trust, based upon allegations that defendant violated the statute which makes unauthorized practice of law by a corporation a criminal offense; and he contends that defendant having derived profits from such unlawful practice became a constructive trustee for his benefit. The complaint alleges at great length that Fackler, a licensed attorney, was the agent and instrumentality through whom defendant was able to conduct and consummate its alleged unauthorized practice of law, and that Fackler not only participated therein but that he initiated, controlled and supervised the proceedings through which these fees were unlawfully paid to defendant. From this premise he alleges and in his brief argues that notwithstanding his own part in the transaction he is entitled to compel an accounting from the company of the profits of the unlawful enterprise and to have the court decree that he, rather than defendant, is entitled to such profits. Counsel for defendant say that it is embarrassing for them to treat as admitted, even though only for the limited purpose of testing the

sufficiency of the complaint, "the scandalous and unlawful acts and improper conduct alleged in the complaint to have been done by the company through Fackler," and they say that these charges, if true, would subject Fackler as well as defendant to prosecution under the following Illinois statute, which deals with unauthorized practice of law by corporations. (Ill. Rev. Stat. 1937, ch. 32, secs. 3 and 4 [§§ 413, 414; Jones Ill. Stats. Ann. 32.222, 32.223].) "Sec. 3. Any corporation violating the provisions of this act shall be liable to a fine of not more than five hundred dollars ($500), any (and) every officer, trustee, director, agent or employee of such corporation who directly or indirectly engages in any of the acts herein prohibited or assists such corporation to do any such prohibited act or acts is guilty of a misdemeanor and upon conviction shall pay a fine of not less than two hundred dollars ($200) or more than five hundred dollars ($500).

"Sec. 4. The fact that any such officer, trustee, agent or employee shall be a duly and regularly admitted attorney at law shall not be held to permit or allow any such corporation to do the acts prohibited herein, nor shall such fact constitute a defense upon the trial of any of the persons mentioned herein for a violation of the provisions of this act."

Obviously any corporation engaging in unauthorized practice of law must of necessity do so through the agency of an attorney. This is clearly pointed out under the "Unauthorized Practice News" for April, 1935, issued by the American Bar Association Committee on Unauthorized Practice of Law, as follows: "It has long been recognized by Unauthorized Practice and Ethics Committees of our various local and national bar associations that the unlawful practice of law in any degree substantially injurious to the public and the profession can exist only through participation of lawyers." The impropriety of licensed attorneys, who,

as employees of corporations, aid and assist in the unauthorized practice of law, has likewise been recognized by the courts. (*In re Pace,* 156 N. Y. Supp. 641; *In re Otterness,* 181 Minn. 254.)

As a result of the allegations of the complaint, it seems clear to us that Fackler has brought himself within the purview of the rule that a court will not aid one party to an unlawful transaction to compel another party thereto to account for moneys or profits alleged to have arisen out of such transactions. In *Shaffner v. Pinchback,* 133 Ill. 410, the court held that where persons engaged in an unlawful business so that they are *in pari delicto* the law will not assist either one, but will leave them where they have placed themselves. In *Miller v. Davidson,* 3 Gilm. (Ill.) 518, the court said (pp. 524, 525): "No principle is better settled, than that where two or more persons embark in an unlawful transaction, and one gets the advantage of the others, and appropriates more than his proportion of the spoils to himself, the Court will not interfere to make him divide with the others. As they commenced with a violation of the law, they cannot invoke its aid in any way. The law will not meddle with gains obtained by its own outrage, as between those who have been engaged in trampling it under foot."

Plaintiff cites and discusses in his brief *People v. Peoples Stock Yards State Bank,* 344 Ill. 462, wherein upon an information filed a bank was found guilty of practicing law and was punished for contempt. The improper acts of the bank were consummated and carried out by certain attorneys employed by it. Plaintiff says that if in that case the attorneys who assisted the bank in doing the acts for which the bank was punished had brought suit to recover fees for their services, "there would have been equity in their bill," and it is argued by plaintiff's counsel that "that is the exact condition that we contend for in this case." In

advancing this contention counsel overlook the fact that these attorneys, whose conduct made it possible for the bank to violate the statutes and public policy of this State, were culpable in the eyes of the law equally with the corporation itself, and by engaging in and furthering the enterprise they made themselves guilty of a crime and subject to punishment. (Ill. Rev. Stat. 1937, ch. 32, secs. 3, 4, ¶¶ 413, 414 [Jones Ill. Stats. Ann. 32.222, 32.223].) Obviously if the attorneys involved in the *Stock Yards Bank* case had sought an accounting for the profits of their illegal enterprise there would have been no equity in their claim, but under the authorities hereinbefore cited the court would have left them where it found them—as participants in an unlawful enterprise.

This principle was expressly recognized in *Midland Credit Adjustment Co. v. Donnelley,* 219 Ill. App. 271, cited by plaintiff, where, in a suit for an accounting, the petition alleged that plaintiffs, a corporation and an attorney at law, were employed to collect certain accounts, with or without legal proceedings, that the contract for services was joint and not severable, and stated a case wherein the corporation and the attorney were engaged in the practice of law and were attempting to evade the law, it was held that the bill was subject to demurrer since the contract was violative of public policy.

Plaintiff's counsel cite and rely on *Pitsch v. Continental & Commercial Nat. Bank,* 305 Ill. 265, as affording a basis for recovery between parties who were *in pari delicto.* In that case Pitsch was a notary public employed by the Continental Bank from October, 1911, to December, 1918, under a contract by which he agreed to act as a notary public in the matter of protesting commercial paper whenever required by the bank. For these services he was to receive 12½ per cent of all protest fees, the bank retaining the balance. This work

required all his time, and was done on the premises of the bank, which furnished him with desk room, records, stationery, telephone service and everything used in his notarial work except his official seal. The bank collected all the fees for notarial services rendered, and twice a month made a settlement with Pitsch paying him 12½ per cent of the fees collected. In 1919 he filed a bill seeking an accounting. As applicable to the question under consideration the Supreme Court held that a notary public is a public office, recognized by the commercial law of the world; that the fees of his office are fixed by statute; that his contract of employment required the rendering of official services, and that he rendered no other service; that a contract whereby a public officer, whose compensation is fixed by statute, agrees to accept for his official services something different than that provided by statute is contrary to public policy and void, and that his compensation as a public official for the performance of his official duties is not a matter of traffic or trade, for bargaining or for favoritism. One of the defenses there interposed was that Pitsch and the bank were *in pari delicto,* and that the law would not aid either but would leave them where it found them. The court held that the doctrine did not apply, and said (p. 272) that "the test for determining whether or not the objection that the plaintiff and defendant were *in pari delicto* can be sustained is by considering whether the plaintiff can make out his case otherwise than through the medium and by the aid of the illegal transaction to which he was himself a party." That case can readily be distinguished from this proceeding in the following respects: Fackler was not an officer with official duties or salary fixed by statute, but an attorney with authority to contract regarding fees or salary which he would require and accept for his professional services. Furthermore, there was nothing illegal or improper in the rendition

of the services in the *Pitsch* case; the only respect in which public policy was there violated was in the agreement relative to the disposition of the fees. In this case Fackler claims fees for services, the very rendition of which is alleged to have been by violation of law, and the distinction between illegality in the rendition of services as compared with the illegality merely in the manner of their payment or in matters otherwise not affecting their rendition, is recognized in *City of Rochester v. Campbell,* 184 Ind. 421, and *Barngrover v. Pettigrew,* 128 Ia. 533.

Aside from the consideration that the illegal aspect of these transactions, as alleged, prevents any recovery thereon, the law is well settled that a constructive trust is created by operation of law, and allegations of fact requisite to show a constructive trust must be made in the complaint. Assuming that under the allegations of the bill, Fackler, as an attorney, subjected both himself and the company to a charge of violation of law, he was still fully responsible for his own acts, and no facts are alleged which tend to show that his conduct was the result of fraud, coercion or undue influence practiced upon him by the company. As attorney for defendant it was his duty to counsel and advise against the commission of unlawful acts rather than to carry out and consummate them (*Ross v. Payson,* 160 Ill. 349), and after his employment had terminated he cannot seek to turn his conduct to his own personal advantage at the company's expense. The courts have consistently held that a constructive trust arises through a species of fraud practiced by one party on another, and only where the innocent party is a victim of the other's undue influence, but equity will not raise a trust, constructive or otherwise, for the benefit of one who seeks to establish the same by allegations of his own unlawful conduct. (*Rosenbaum v. Huebner,* 277 Ill. 360; Bogert, Trust and Trustees, vol. 3, sec. 472,

p. 1461.) In *Guatelli v. Brown,* 84 N. J. Eq. 33, the court appropriately stated the rule as follows: ''To transform so irregular and . . . reprehensible a transaction into a trust for . . . [plaintiff's] benefit would not be doing equity. Trusts are often raised against those who participate in indefensible transactions, but not in their favor.''

We are of the opinion that the chancellor properly dismissed the complaint for want of equity. The decree of the circuit court is affirmed.

*Decree affirmed.*

SCANLAN and SULLIVAN, JJ., concur.