RUSSELL A. MAYNARD, Plaintiff-Appellee, *v.* CHARLENE M. PARKER *et al.*, Defendants.—(THE SISTERS OF THE THIRD ORDER OF ST. FRANCIS, Appellant.)

Third District   No. 77-8

Opinion filed November 3, 1977.

Bartley, Hession & Palmer, of Peoria, for appellant.

Louis E. Olivero, of Peru, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

After he was injured in an automobile accident, plaintiff Russell Maynard retained attorney Louis E. Olivero who filed a personal injury suit in the Circuit Court of Bureau County. Pursuant to "An Act providing for a lien for nonprofit hospitals * * *" (Ill. Rev. Stat. 1975, ch. 82, par. 97 et seq.), the Sisters of the Third Order of St. Francis, who are the corporate owners and operators of St. Francis Hospital in Peoria, perfected a hospital lien for $11,028 against plaintiff's personal injury claim. The lien was for the unpaid balance of the hospital bill for treatment rendered to plaintiff. Attorney Olivero negotiated a settlement of plaintiff's claim for $37,500. In connection with the settlement, a check for $11,028 was issued payable to Russell A. Maynard, Estelle A. Maynard, Louis E. Olivero, and St. Francis Hospital.

Plaintiff filed a petition requesting, inter alia, that the hospital be ordered to pay a portion of plaintiff's attorneys' fees equal to 50% of costs and 50% of the value of its claim for medical services. The trial court found that plaintiff's counsel, through his efforts, created the settlement fund of $37,500, that plaintiff incurred expenses of $616.46, and that in equity plaintiff's counsel should be allowed compensation from all who directly benefit from the fund. The court then ordered that Olivero recover one-third of the costs and one-third of the lien claim, amounting to a total of $3,881, payable out of the check for $11,028, leaving $7,147 for the hospital. The hospital has appealed from that order.

■■ Before discussing the merits of this case we must first consider plaintiff's motion to dismiss the appeal for the hospital's failure to file an adequate record on appeal, which motion was taken with the case. The record includes plaintiff's original complaint, the petition for costs and fees, and the court order appealed from. Plaintiff's motion to dismiss asserts that the record is deficient because it does not include any responsive pleadings, or a report of proceedings or agreed statement of facts. Since the order of the trial court recited that counsel for both parties were present and that arguments of counsel were heard, it is obvious that the hospital resisted the petition. We note that the error urged on appeal is solely one of law and apparently no evidence was heard. Where the judgment appealed from relates only to a question of law involving an

order which was a part of the common law record, the record on appeal is adequate without a transcript of proceedings. (*Kuhlman v. Cotter* (3d Dist. 1968), 92 Ill. App. 2d 475, 234 N.E.2d 815.) The motion to dismiss is denied.

■■ ■ The primary question presented by this appeal is whether plaintiff is entitled to have the hospital pay a proportionate share of plaintiff's attorneys' fees. As a general rule, the right of an attorney to recover for professional services must rest on the terms of a contract of employment, either express or implied, with the person sought to be charged, and cannot be based on a benefit derived by a third party from the services rendered by the attorney. (*Grossberg v. Knight* (1st Dist. 1932), 266 Ill. App. 183; 4 Ill. L. & Prac. *Attorneys and Counselors* §123 (1971); *cf. Klein v. Chicago Title & Trust Co.* (1st Dist. 1938), 295 Ill. App. 208, 14 N.E.2d 852.) Also, the client who engaged the attorney and paid his fees is not entitled to recover a proportionate share of the attorneys' fees from those who receive a benefit from the services. 7 Am. Jur. 2d *Attorneys at Law* §205 (1963).

■■ Courts of equity have created several exceptions to these general rules. For example, the beneficiary of legal services can be required to compensate another party's attorney where principles of unjust enrichment or *quantum meruit* apply (*Lyons v. City of Shreveport* (La. App. 1976), 339 So. 2d 466); where there has been a breach of fiduciary duty owed to plaintiff (*Hsu Ying Li v. Tang* (1976), 87 Wash. 2d 796, 557 P.2d 342); and where the common fund doctrine is applicable. (*Valentino v. Rickners Rhederei* (2d Cir. 1977), 552 F.2d 466; *State Life Insurance Co. v. Board of Education* (1948), 401 Ill. 252, 81 N.E.2d 877.) In addition, specific statutes have authorized apportionment of attorneys' services. For example, *Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 322 N.E.2d 29, involved the assertion of a lien for medical treatment paid for by the Department of Public Aid pursuant to the Public Aid Code (Ill. Rev. Stat. 1967, ch. 23, par. 11—22)).

■■ The common fund doctrine has been described as "based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 124, 361 N.E.2d 1100, 1102; 20 Am. Jur. 2d *Costs* §84 (1965).) The common fund doctrine is most often applied in class action suits (*e.g., Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1), but is not limited to such cases. (*Board of Education v. County Board* (2d Dist. 1976), 35 Ill. App. 3d 684, 342 N.E.2d 223.) In *Baier* the supreme court ruled that, where a fund has been created as the result of legal services performed by an attorney for his client, and a subrogee of the client, who has done nothing to aid in

creating the fund, seeks to benefit therefrom, the attorney is entitled to a fee from the subrogee in proportion to the benefit received by the subrogee.

In the trial court here, plaintiff successfully argued that the decision in *Baier* is controlling, and that the hospital should be required to pay to Olivero an amount equal to one-third of its lien claim because his efforts produced the settlement fund from which the lien would be satisfied.

The hospital contends that the *Baier* decision should be limited to cases involving funds recovered by subrogees, and points out that the court expressly declined to extend its ruling beyond a subrogation situation. The court said:

> "Defendant contends next that if, under the circumstances of this case, it is required to pay an attorney fee, a physician or hospital who had rendered medical services to a claimant might also be required to pay a proportionate share of the attorney fee. This record presents no such question, and the contention need not be further discussed." 66 Ill. 2d 119, 127, 361 N.E.2d 1100, 1103.

In a case with facts nearly identical to the case at bar, the Supreme Court of Montana ruled that the benefit received by the hospital was an incidental benefit and did not create an implied contract by the hospital to pay for the services of plaintiff's attorney. (*Sisters of Charity v. Nichols* (1971), 157 Mont. 106, 483 P.2d 279.) The Montana court distinguished subrogation cases as follows:

> "The attorneys and their client additionally contend, however, that the hospital here is obligated to share in the attorneys' fees and costs of collection on the same basis that a subrogated insurer is obligated to share attorneys' fees and costs with its insured in recovery against a third party. This analogy is inapt and the principle inapplicable here. The obligation of the subrogated insurer to share in the costs of recovery from a third party wrongdoer arises because the insurer occupies the position of the insured with coextensive rights and liabilities and no creditor-debtor relationship [exists] between them. But here, unlike that situation, the hospital's claim and lien is based upon a debt owed the hospital by its patient in whose shoes it does not stand for any purpose, the debt being owed to it by its patient irrespective of the patient's rights against a third party wrongdoer. Because the substitution principle does not apply here, no obligation arises on the part of the hospital to share in the costs of recovery against a third party, and the attempted analogy fails." 157 Mont. 106, 112-13, 483 P.2d 279, 283.

A similar conclusion was reached in *Mid-West National Bank v. Metcoff* (2d Dist. 1974), 23 Ill. App. 3d 607, 319 N.E.2d 336, which

involved a mortgage foreclosure proceeding against the mortgagors who subsequently appealed from the foreclosure decree. After two judgment creditors of the mortgagors successfully defended the appeal, the creditors' attorneys sought to recover attorneys' fees from the mortgagee on the ground that they protected or increased a common fund from which the mortgagees benefited. The reviewing court held that the common fund doctrine was not applicable because the judgment creditors primarily sought to preserve their own lien interest and only incidentally benefited the mortgagees.

■■ As was the case in *Mid-West*, the benefit to the hospital resulting from Olivero's services was merely incidental to the primary purpose of obtaining compensation for plaintiff's injuries. The hospital's position is analogous to that of the prior judgment creditors in *Mid-West*, not to that of the subrogee in *Baier*, in that the hospital's right to payment of its claim is not dependent upon plaintiff's recovery against a third party but rather involves an ordinary debtor-creditor relationship. Furthermore, to permit this plaintiff to recover part of his attorneys' fees from the hospital could logically lead future plaintiffs to seek a similar contribution for fees from other creditors merely because the funds to pay debts were obtained through the efforts of the plaintiff's attorney. We cannot justify extending the common fund doctrine to require a mortgagee or a furniture store or any other creditor of a plaintiff to contribute to the fees of the plaintiff's attorney if the funds recovered by litigation are used to satisfy the plaintiff's obligations.

The allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution in regard to the rights of creditors. In cases such as this it is better to leave those concerned to contract for the compensation to be paid for the services rendered or received.

For the reasons given, we conclude that the trial court erred when it ordered the hospital to pay $3,881 to plaintiff for attorneys' fees and costs. The order of the Circuit Court of Bureau County is reversed.

Reversed.

ALLOY and STOUDER, JJ., concur.