INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellee,

v.

Irvin L. NORTON, Christine Norton and Earl L. Vuagniaux, Defendants-Appellants,

and

Earl L. VUAGNIAUX and Irvin L. Norton, Plaintiffs-Appellants,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.

No. 82–2969.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1983.

Decided Aug. 10, 1983.

Stephen M. Tillery, Kassly, Bone, Becker, Dix & Tillery, Belleville, Ill., for defendants-appellants.

Joseph R. Davidson, Bernard & Davidson, Granite City, Ill., for plaintiff-appellee.

Before CUDAHY and POSNER, Circuit Judges, and ROSENN, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

This appeal involves a dispute over rights to a fund of money. The fund was created pursuant to a "Loan Receipt Agreement" entered into by appellants Irvin and Christine Norton (the "Nortons") and appellee Insurance Company of North America ("INA"). The district court granted INA's motion for summary judgment, ordered judgment entered for $100,000 plus interest

---

* The Honorable Max Rosenn, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, is sitting by designation.

in favor of INA and this appeal followed. We affirm.

I

This case stems from a lawsuit based on the Illinois Structural Work Act filed in 1972 by the Nortons against the Wilbur Waggoner Equipment Rental and Excavating Company ("Waggoner") and Collinsville Community School District No. 10 (the "School District") in the Illinois Circuit Court. Appellant Earl Vuagniaux, Donald Metzger and Frank Hudak were retained by the Nortons to prosecute the Nortons' claims, and they entered into a contract with the Nortons providing for the payment of fees on a contingency basis. The fees contemplated ranged from 25 to 50 percent of all sums recovered, depending on the extent of the litigation necessary.

Prior to trial, INA, Waggoner's insurer, entered into an agreement with the Nortons providing that INA would loan $100,000 to the Nortons. This "loan receipt" agreement provided that the Nortons were to repay INA the $100,000 or any portion thereof, interest free, from any sums recovered from the School District after first deducting any amounts the Nortons were required to pay to any other parties. The Nortons were victorious at trial but the Illinois Appellate Court reversed. The Illinois Supreme Court initially affirmed the appellate court's reversal, but on rehearing it reversed and remanded the case so that judgment could be entered for the Nortons. The School District subsequently paid $232,241.83 to the Nortons. To date, Vuagniaux has received approximately $53,000 of this sum. There is no ready explanation why this amount falls far short of the 50 percent fee to which his contract with the Nortons entitled him.

In July of 1980, Vuagniaux filed in the above action a document entitled "Petition to Adjudicate Rights of Parties to a Certain Fund and Enter Judgment on Questions of Attorney's Fees and Unreimbursed Expenses" (the "Petition"). Vuagniaux sought to have the circuit court take jurisdiction over the $100,000 fund created by the loan receipt agreement until the court fixed the amount of attorney's fees due from the fund to him. Vuagniaux sought to recover 50 percent of the fund for attorney's fees, plus approximately $2,000 for unreimbursed expenses. The circuit court thereafter ordered that custody of the $100,000 be assumed by the court and that the money be placed in an interest-bearing bank account until the ownership of the fund was settled.

On the same day that Vuagniaux filed his petition, INA filed suit in the U.S. District Court to recover the fund. The complaint was based upon the Nortons' obligation to repay the fund under the terms of the loan receipt agreement.

In August of 1980, INA sought to remove Vuagniaux's July, 1980 Petition to federal court. The removal petition was denied, in September of 1980, on several grounds, the first being that because Vuagniaux's Petition did not commence an action in the state court, that court had no jurisdiction. Since the jurisdiction of the federal courts upon removal is wholly derivative from state court jurisdiction, the district court denied the removal petition.

In February of 1981, Vuagniaux and Irvin Norton filed a separate lawsuit in state court seeking an adjudication of attorney's fees properly payable from the fund. INA responded by petitioning the district court for the removal of the lawsuit to the federal court. In an order dated August 5, 1981, the district court agreed with INA that the removal was proper and refused to remand the case to state court. The court also ordered the case consolidated with the action INA had earlier filed in the federal district court. The district court found diversity jurisdiction by realigning certain defendants (and refusing to realign others) according to their true interests in the litigation. In an April 15, 1982 order the district court found the "equitable fund doctrine" to be inapplicable to the case before it, and on November 3, 1982, the court granted INA's motion for summary judgment and entered a judgment for $100,000 in favor of INA plus any interest which had

accumulated while the fund was deposited under the control of the state court.

## II

Appellants argue first that the district court erred in its order of August 5, 1981, allowing removal of the February 1981 state court suit filed by Vuagniaux and Norton. To achieve the necessary complete diversity between the parties, the district court agreed with INA and realigned Frank Hudak[1] as a party plaintiff and refused to realign Irvin Norton as a party defendant. The record discloses that the district court had an adequate evidentiary basis upon which to conclude that, on the date the complaint was filed, neither Hudak nor Norton had any actual and substantial conflict with Vuagniaux. Appellant argues, however, that INA was collaterally estopped from contesting appellants' claim that Norton should be realigned as a defendant because of the district court's statement in its September 1980 order denying removal of the state case that Irvin Norton's real interests in the litigation were adverse to Vuagniaux's.

■ There are several reasons why appellant's argument fails. Most importantly, the district court's September 1980 order denied removal of Vuagniaux's Petition primarily on the grounds that no action had actually been commenced in the state courts by the Petition. Because no action had been commenced, there was no case in the state court which could, by virtue of 28 U.S.C. § 1441, be removed to the federal court. *See Freeman v. Bee Machinery Co.,* 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); 14 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3271 at 520–24 (1976). The district court's finding as to the proper alignment of Irvin Norton involved only one of three theories considered by the district court, none of which were necessary bases for the court's decision denying removal. It is axiomatic

that a party will be precluded by collateral estoppel from relying on an argument only where the determination as to the argument relied on was essential to the judgment in a prior action. *Evans v. Wilkerson,* 605 F.2d 369 (7th Cir.1979); *Continental Can Co., U.S.A. v. Marshall,* 603 F.2d 590 (7th Cir.1979); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1981). The determination of the proper alignment of Irvin Norton was wholly unnecessary to the result reached by the district court in its September 1980 order. We therefore find that the district court did not err in declining to apply collateral estoppel against INA with respect to the issue of Norton's true interests in the litigation.

While it does not appear that appellants challenge the substance of the district court's holding concerning Norton's proper stance in the litigation, if we were to reach the substance of that holding, we would find that Irvin Norton was properly aligned as a plaintiff in this action. Norton has no apparent reason to care whether INA is ordered to pay part of the fund to Vuagniaux as a fee for its recovery. In fact, Norton may well profit from INA's success if, as was suggested at oral argument, Norton's debt to Vuagniaux is in some way reduced due to Vuagniaux's recovery from INA. Thus, Norton's interests are certainly not adverse to Vuagniaux's interests in this suit, and Norton is clearly best aligned as Vuagniaux's ally rather than as his adversary.[2]

■ Appellants argue next that the district court erred in finding that the "equitable fund doctrine" was inapplicable to this case. The equitable fund doctrine is an exception fashioned by the courts to the general rule that "the right of an attorney to recover for professional services must rest on the terms of a contract of employment, either express or implied, with the person sought to be charged, and cannot be based on a benefit derived by a third party from the services rendered by the attorney." *Maynard v. Parker,* 54 Ill.App.3d

---

1. Hudak withdrew any claim to the fund and was dismissed from the case by the district court's order of November 3, 1982.

2. We further note that Irvin Norton was a co-plaintiff in the February 1981 state suit brought by Vuagniaux.

141, 11 Ill.Dec. 898, 900, 369 N.E.2d 352, 354 (1977), aff'd, 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979). As described by the Illinois Supreme Court, the doctrine is "based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." *Baier v. State Farm Insurance Co.*, 66 Ill.2d 119, 5 Ill.Dec. 572, 361 N.E.2d 1100, 1102 (1977). The doctrine is apparently widely accepted, *see State Farm Mutual Automobile Insurance Co. v. Geline*, 48 Wis.2d 290, 179 N.W.2d 815, 819–20 (1970); Annot., 2 A.L.R.3d 1441 (1965), and was explicitly adopted, in a context somewhat similar to the one before us, by the Illinois Supreme Court in the *Baier* case.

In *Baier*, the plaintiff attorney had been employed by Richard Kincaid to represent Kincaid in a claim for damages for personal injuries suffered in an automobile accident. The car driven by Kincaid was insured by the State Farm Insurance Company ("State Farm"). State Farm paid $1,000 to Kincaid, the maximum amount of medical coverage provided by his policy, and required that he enter a "Loan Receipt" agreement which provided: (1) that the $1,000 was to be considered a "loan without interest" which Kincaid would repay if any recovery was made from the tortfeasor; and (2) that Kincaid would "if necessary enter into and prosecute action ... with all diligence" against the tortfeasor. 5 Ill.Dec. at 573, 361 N.E.2d at 1101. After Kincaid reached a settlement with the tortfeasor's insurer, the plaintiff attorney asked State Farm to "pay him a reasonable fee for the services he had performed in recovery of its subrogation claims." *Id.*

The Illinois Supreme Court ordered State Farm to pay the attorney a reasonable fee, rejecting State Farm's argument that the adoption of the common fund doctrine would substantially alter the subrogation law of the state and cause the prior contract between Kincaid and State Farm to be violated. The Court found that under the fund doctrine, Kincaid would still make the full reimbursement required under the Loan Receipt, while Kincaid's attorney retained a right of action to recover from the insurer.

■ *Baier* would completely control the case before us, except for one significant factual distinction. In the case before us, the insurer which entered into the loan receipt agreement with the plaintiff was the *defendant's,* rather than the plaintiff's, insurer. This case is thus unlike *Baier,* where the plaintiff had a pre-existing contractual relationship, *i.e.,* the relationship of the insurance contract, with the insurer which "loaned" the plaintiff the money. In the case before us, INA's payment was in the nature of a voluntary settlement of the claim it apparently thought it *might* have to pay, whereas in *Baier,* State Farm was obligated to pay under the terms of the insurance contract it had entered into with the plaintiff. There is no subrogor-subrogee relationship in the case before us; unlike the situation in *Baier,* INA was not subrogated to any claim of the Nortons. Vuagniaux's work did not in any way substitute for a subrogation action brought by INA, because INA did not, in fact, have a right to bring a subrogation action.

As the district court noted in its April 15 order, INA had a simple interest in extricating itself as cheaply as possible from the Nortons' lawsuit. To achieve that goal, it negotiated the loan receipt agreement. The agreement entailed costs and benefits for the Nortons, INA, and, the Nortons' attorneys. Both of the parties to this lawsuit, INA and Vuagniaux, were fully capable of looking out for their own interests at the time the loan receipt agreement was negotiated. There has been no indication during the course of the lawsuit that the parties could not have agreed to some type of contractual fee arrangement if that had been their intention at the time the loan receipt was negotiated.

As this court has noted, "[r]ecent case law in Illinois ... has restricted the application of the fund doctrine to class actions and insurance subrogation cases." *McKee-Berger-Mansueto, Inc. v. Board of Educa-*

*tion,* 691 F.2d 828, 835 (7th Cir.1982). We have neither been referred to, nor discovered, any Illinois cases which are in conflict with the *McKee-Berger-Mansueto* principle and we are equally unknowledgeable about cases which present fact situations closely analogous to the case before us. In another case seeking to extend *Baier* beyond the subrogation context, the Illinois Appellate Court stated:

> The allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution in regard to the rights of creditors. In cases such as this it is better to leave those concerned to contract for the compensation to be paid for the services rendered or received.

*Maynard v. Parker,* 54 Ill.App.3d 141, 11 Ill.Dec. 898, 900, 369 N.E.2d 352, 355 (1977), *aff'd,* 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979). We agree with these views and therefore approve the determination of the district court with respect to the nonapplicability of the common fund doctrine to this case.

■ Appellants' final argument must, however, be noted. Appellants argue that INA is entitled only to interest at a rate of five percent while the fund has been under the control of the court. Appellants rely for this argument on the Illinois statutory provision allowing creditors to receive interest at a rate of five percent on past due debts. Ill.Ann.Stat. ch. 17, § 6402 (Smith-Hurd 1981).

We agree with the district court that the Illinois statute does not apply to the case before us. Once the $100,000 was deposited with the court, there were no debtor-creditor relationships as among INA, Vuagniaux and the Nortons. The district court found, and we fully agree, that the parties' actions in depositing the money with the court, to be placed in an interest bearing account, evidenced an intention that whoever prevailed would be entitled to the sum then on deposit (*i.e.,* the $100,000 plus whatever interest had accumulated). Because INA has been successful in asserting its right to the entire fund, it would be inequitable to INA,

and create a windfall for the Nortons, to limit INA to interest of five percent with the remainder of the interest earned accruing to the Nortons.

For the reasons stated above, the judgment of the district court is therefore

AFFIRMED.