THE VILLAGE OF CLARENDON HILLS, Plaintiff, v. BERNARD H. MUL-
DER *et al.*, Defendants-Appellees (Burke and Ryan, Petitioner-Appellee, Ar-
thur G. Jaros, Sr., Respondent-Appellant).

Second District    No. 2—95—0715

Opinion filed March 20, 1996.—Rehearing denied April 29, 1996.

728

Edward N. Tiesenga and Beverly J. Tiesenga, both of Tiesenga & Tiesenga, P.C., of Elmhurst, for appellant.

Stephen M. Burke, Timothy J. Ryan, and William E. Ryan, all of Burke & Ryan, of Chicago, for appellee Burke & Ryan.

Steven J. Rosenberg, of Rosenberg & Opdycke, of Chicago, for appellees Barbara L. Mulder and Bernard H. Mulder.

J. Steven Butkus and John J. Pcolinski, Jr., of Guerard, Kalina & Butkus, of Wheaton, for appellee Bank of Caledonia.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

After a hearing, the trial court granted Burke & Ryan's petition to withdraw attorney fees from a condemnation fund. On appeal the mortgage lien holder, Arthur G. Jaros, Sr., argues that the trial court erred in granting Burke & Ryan's motion to withdraw attorney fees because: (1) the fund doctrine does not apply to the facts of this case; (2) the appellant has a superior lien on the fund; and (3) compelling equities do not outweigh the first-in-time priority lien rule. We agree with the mortgagee and reverse.

The following facts are taken from the record. As memorialized in four separate loan agreements, the mortgagors, Barbara and Bernard Mulder, borrowed $460,000 from the mortgagee, appellant, Arthur Jaros, Sr., for the purchase and improvement of a warehouse located in the Village of Clarendon Hills (Village). The loan agreements were executed between September 25, 1990, and September 19, 1991, and were separately secured through recorded trust deeds. The loan agreements provided that, in the event of default or foreclosure, the Mulders agreed to pay the mortgagee's attorney fees. In May 1990, the Village of Clarendon Hills offered the Mulders $600,000 for the

property, to be paid over 10 years in installments at 10% a year, for a total of $897,000. The Mulders rejected the offer and instead listed the property for sale.

By May 1991, the Mulders fell delinquent in their mortgage payments, and by September 20, 1991, the Mulders stopped making mortgage payments. In addition, although Mr. Mulder continued to collect rents from commercial tenants, he stopped paying the general real estate taxes and allowed the liability and casualty insurance to be cancelled for nonpayment of premiums. The mortgagee paid the real estate taxes and insurance premiums at a cost of $47,407.23. On August 22, 1991, the mortgagee sent a letter to the Mulders which stated that they were delinquent on their loans and requested a response. Mr. Mulder assured the mortgagee that he would repay the loans through the proceeds of a condemnation suit. Mr. Mulder asked the mortgagee not to interfere with negotiations with the Village regarding the condemnation of the property. In May 1992 the Mulders refused an offer from the Village of $585,000. Also in May 1992, the Mulders secured a $290,566.13 settlement from a former tenant.

In June 1992, the Village filed suit to condemn the property. At the time, the Mulders owed the mortgagee not more than $520,000 on the promissory notes. The Village named the mortgagee a defendant in the condemnation suit and served the mortgagee with a summons. However, someone deleted the instructions to file an answer contained in the summons. The summons merely instructed the mortgagee to appear. In July, the mortgagee appeared *pro se.* However, for the next $2^1/2$ years, neither counsel for the Village nor counsel for the Mulders served the mortgagee with copies of the pleadings, discovery, notices of motions or orders, or any other documents indicating the status of the condemnation suit.

In August 1992, the Mulders hired Burke & Ryan (Burke) to represent them in the condemnation suit. The Mulders agreed to pay Burke one-third of the condemnation award over $585,000, as a contingency fee. The fee agreement was not recorded. Burke conducted and participated in discovery, motions, and hearings and provided other services relating to the condemnation suit. After July 1992, the mortgagee received no notice regarding the suit until December 13, 1994, when he received a copy of the Mulders' motion to default him. The trial court granted the motion to default the mortgagee, but later vacated the order. In anticipation of a settlement between the Village and the Mulders, the mortgagee's counsel filed a motion to distribute funds pursuant to his interest in the property on December 23, 1994. The mortgagee alleged that, under the terms of the four recorded loan agreements, the Mulders owed him

$879,532.35 in principal, interest (calculated at the default rate), real estate taxes, insurance premiums, and default fees.

Subsequently, the Mulders accepted a settlement offer from the Village for $800,000. The mortgagee did not object to the settlement agreement. On January 17, 1995, the trial court entered an agreed judgment order, and the Village placed the $800,000 on deposit with the Du Page County treasurer's office. Accordingly, title to the property vested in the Village. On February 14, 1995, the mortgagee filed another motion for distribution of funds pursuant to his interest in the condemned property. The Mulders objected to the motion and filed a counterclaim.

On March 2, 1995, Burke petitioned the court for a distribution of $109,704.12 for attorney fees and costs. Although the mortgagee objected to Burke's motion, the trial court granted it under its authority to distribute the just compensation deposited with the county treasurer "among all persons having an interest in the property according to the fair value of their legal or equitable interests." 735 ILCS 5/7—127 (West 1994). The trial court found that the mortgagee "sat on his rights," "took no action," and benefitted from Burke's efforts. Applying the common fund doctrine, the trial court ordered the Du Page County treasurer to distribute $109,704.12 to Burke for attorney fees and costs. Subsequently, the mortgagee and the Mulders entered into a settlement agreement whereby the Mulders received $40,295.78 and the mortgagee received $650,000. The Mulders, the State Bank of Caledonia (a creditor of the Mulders), and the mortgagee released each other from all prior claims. However, the settlement agreement provided that the mortgagee reserved the right to appeal the trial court's order allowing Burke to withdraw attorney fees and costs from the condemnation award. The mortgagee filed this timely appeal.

■ Initially, we address Burke's claim that the mortgagee waived his right to appeal. Burke asserts that the mortgagee waived his right to appeal the apportionment of the condemnation award because the mortgagee and the Mulders entered into a settlement and release of claims against each other. We disagree and, after reviewing the language of the settlement agreement, we find Burke's assertions disingenuous at best. The settlement agreement provides:

> "[The mortgagee] reserves the right to appeal the award of attorney's fees to Burke & Ryan from the just compensation on deposit with the Du Page County Treasurer; and nothing in this order shall operate to prevent [the mortgagee] from recovering and receiving said attorney fees on appeal."

Because the mortgagee expressly reserved his right to appeal the

trial court's order granting Burke's motion to withdraw, we determine that the mortgagee did not waive his right to appeal by entering into a settlement agreement with the Mulders.

■ Next, Burke argues that the mortgagee waived his right to appeal the trial court's apportionment of the condemnation award because the mortgagee withdrew a portion of the award. However, Burke cites no relevant authority to support its argument. Burke cites cases in which the appellant challenged the amount of the condemnation award. *County of Cook v. Malysa*, 39 Ill. 2d 376 (1968) (a condemnor may not appeal a condemnation award after it voluntarily pays the award and takes possession of the property); *Department of Public Works & Buildings v. Forbeck*, 118 Ill. App. 2d 231, 234 (1969) (a property owner may not appeal a condemnation award after he accepts "the amount of the award in satisfaction of the judgment"). However, nothing in the record or the briefs indicates that the mortgagee appeals the *amount* of the award. Instead, the mortgagee appeals the trial court's order which allowed Burke to withdraw attorney fees from the condemnation award fund. Accordingly, Burke's assertion that the mortgagee waived his right to appeal fails.

On appeal, the mortgagee first argues that the common fund doctrine does not apply to the facts of this case. Burke argues that the fund doctrine applies in this case because it conferred a benefit on the mortgagee by increasing the amount of the condemnation award while the mortgagee "sat on his rights." The trial court adopted Burke's argument. We disagree.

■ Generally, absent a contractual or statutory obligation, a successful party may not recover attorney fees or costs, and a third party who benefits from an attorney's professional services has no obligation to pay the attorney. *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 628 (1995). The common fund doctrine is an exception to the general rule. *Dyniewicz*, 271 Ill. App. 3d at 628.

Under the common fund doctrine, an attorney who performs services creating, protecting, or preserving a fund commonly held for the benefit of others may be compensated out of the fund. *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995); *Powell v. Inghram*, 117 Ill. App. 3d 895, 898 (1983). An attorney may collect attorney fees under the common fund doctrine only if: (1) the fund from which fees are sought was created as a result of legal services performed by the attorney; (2) the claimant of the fund did not participate in its creation; and (3) the claimant benefitted or will benefit from its creation. *Tenney v. American Family Mutual Insurance Co.*, 128 Ill. App. 3d 121, 122 (1984). The common fund doctrine is most

often applied to funds recovered by subrogees (*e.g., Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119 (1977)), and funds recovered in class action suits (*e.g., Brundidge*, 168 Ill. 2d 235). Because the common fund doctrine is an exception to the general rule, it must be narrowly construed. *Dyniewicz*, 271 Ill. App. 3d at 628. Accordingly, Illinois courts have refused to extend the doctrine to creditor/debtor relationships. *Maynard v. Parker*, 54 Ill. App. 3d 141, 145 (1977), *aff'd*, 75 Ill. 2d 73 (1979).

The creditor/debtor relationship in the instant case is materially different from the subrogor/subrogee relationships to which the fund doctrine has been applied. For example, in *Maynard* (54 Ill. App. 3d 141), the Appellate Court, Third District, held that the common fund doctrine did not apply to a hospital which had a creditor's lien on a patient's award. *Maynard*, 54 Ill. App. 3d at 145. In *Maynard*, a hospital provided services to a patient who was injured in an automobile accident. The patient retained counsel and filed a personal injury action. *Maynard*, 54 Ill. App. 3d at 142. Subsequently, the hospital perfected a lien against the patient's personal injury claim. *Maynard*, 54 Ill. App. 3d at 142. The lien was for the balance of the patient's unpaid hospital bill. *Maynard*, 54 Ill. App. 3d at 142. After the plaintiff secured a settlement, the trial court ordered the hospital to pay one-third of the costs and one-third of its lien claim to the plaintiff's attorney. The appellate court reversed, reasoning that the common fund doctrine was inapplicable because "the hospital's right to payment *** [was] not dependent upon plaintiff's recovery against a third party but rather involve[d] an ordinary debtor-creditor relationship." *Maynard*, 54 Ill. App. 3d at 145. Therefore, the court stated that the hospital's position was analogous to that of a prior judgment creditor and not to that of a subrogee. *Maynard*, 54 Ill. App. 3d at 145. The court concluded that it could not "justify extending the common fund doctrine to require a mortgagee or a furniture store or any other creditor of a plaintiff to contribute to the fees of the plaintiff's attorney if the funds recovered by litigation are used to satisfy the plaintiff's obligations." *Maynard*, 54 Ill. App. 3d at 145.

Like *Maynard*, the benefit to the mortgagee in the instant case resulting from Burke's services was merely incidental to the primary purpose of obtaining compensation for the condemned property. Unlike the relationship which exists in the subrogation context (*e.g., Baier*, 66 Ill. 2d 119), the mortgagee's claim was not contingent on the Mulders' rights against a third party or the creation of a fund. The mortgagee's claim existed irrespective of the outcome of the condemnation case. Therefore, the mortgagee did not benefit from Burke's efforts. Accordingly, we determine that the trial court erred when it extended the common fund doctrine to this case.

Burke claims that the appellate court's reasoning in *Maynard* (54 Ill. App. 3d 141) is not binding authority because the supreme court affirmed on different grounds (75 Ill. 2d 73 (1979)). Burke asserts that the supreme court justified not applying the fund doctrine because of the unique nature of the Hospital Lien Act (770 ILCS 35/0.01 *et seq.* (West 1994)). However, Burke ignores the fact that our supreme court recognized that the creditor/debtor relationship which existed in *Maynard* differed from the subrogee/subrogor relationship which existed in *Baier* (66 Ill. 2d 119). *Maynard*, 75 Ill. 2d at 75. Our supreme court stated that the relationships differed because the debtor's liability to the creditor in *Maynard* "was not dependent upon the creation of a fund." *Maynard*, 75 Ill. 2d at 75. Instead, the debtor was obligated "to pay for the services rendered by the hospital out of any resources which might become available to him." *Maynard*, 75 Ill. 2d at 75. Therefore, Burke's assertion is erroneous.

In addition, we find Burke's citations to cases involving class action suits misplaced. We believe the creditor/debtor relationship in the instant case is materially different from class action cases in which the fund doctrine has been applied. See, *e.g.*, *Brundidge*, 168 Ill. 2d 235; *Flynn v. Kucharski*, 59 Ill. 2d 61 (1974). Part of the rationale for applying the fund doctrine in class action suits is that the persons who benefit from the fund are members of the same class. *Brundidge*, 168 Ill. 2d at 238. As members of the same class, no member has a right to be paid out of the fund before any other. Their claim to the fund, while proportionate, is equal in status. However, in the instant case, the mortgagee has a superior right to the fund because he is a prior lien holder. Therefore, the mortgagee's and Burke's claims to the fund are not equal in status. Accordingly, the rationale for applying the fund doctrine to funds created by class action suits is inapplicable to the instant case.

Burke cites to *Appeal of Harris*, 323 Pa. 124, 186 A. 92 (1936), a Pennsylvania case, to support its argument that the fund doctrine applies to condemnation awards. After reviewing the case law, we determine that *Harris* is inconsistent with the body of law in this State. Therefore, we decline to follow it.

■ Burke's final argument supporting its assertion that the fund doctrine applies to condemnation award funds is that failure to apply the fund doctrine would violate the United States and Illinois Constitutions. Burke argues, without citation to relevant authority, that, if the fund doctrine is held inapplicable to condemnation cases, owners of property will be unable to retain counsel and will be forced to accept whatever the condemnor offers. According to Burke, this will deprive owners of due process. We disagree. An attorney who

represents an owner in a condemnation suit may secure payment out of the owner's share of the award or any other method that is allowed by law and the code of ethics.

■ Alternatively, Burke argues that doctrines of unjust enrichment and *quantum meruit* require the mortgagee to compensate Burke. These doctrines apply where: (1) " '[o]ne party performs a service that benefits another' "; (2) the benefitting party accepts the benefit; and (3) the circumstances indicate that the service was not intended to be gratuitous. *Frisch Contracting Service Co. v. Personnel Protection, Inc.*, 158 Ill. App. 3d 218, 223 (1987), quoting *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.*, 104 Ill. App. 3d 357, 360 (1982).

■ In the instant case, we determine that the mortgagee did not benefit from Burke's efforts as a matter of law. The mortgagee's claim was not contingent on the outcome of the condemnation case. The Mulders were obligated to pay the mortgagee in accordance with the terms of the loan agreements, irrespective of the amount of the condemnation award.

Further, we determine that the mortgagee did not benefit from Burke's efforts as a matter of fact. The increase in the condemnation award, allegedly effected by Burke, did not even cover the additional debt accrued by the Mulders. The Village offered the Mulders $600,000 for the property in May 1990 and $585,000 in May 1992. It is undisputed that, as late as June 1992, the Mulders only owed the mortgagee not more than $520,000 on the promissory notes. Subsequently, the Mulders increased their debt to the mortgagee by as much as $359,532 by failing to pay insurance premiums, property taxes, and mortgage payments. However, Burke's efforts merely increased the condemnation award by $215,000. Therefore, we determine that, under the facts of this case, the mortgagee did not benefit from and was not unjustly enriched by Burke's efforts.

In addition, Burke argues that we must affirm the trial court's order because Burke's lien on the condemnation fund is superior to the mortgagee's. Burke claims that, when the property was condemned, the mortgagee's liens on the property were replaced with equitable liens on the condemnation award. Accordingly, Burke states that the mortgagee's liens lost priority status. We disagree, because we do not believe that Burke had an equitable lien on the condemnation fund.

●8 To assert an equitable lien on a fund, an attorney must establish that his client assigned a portion of a fund to the attorney. *Cameron v. Boeger*, 200 Ill. 84, 92 (1902); *Department of Public Works v. Exchange National Bank*, 93 Ill. App. 3d 390, 394 (1981). A mere

personal promise by a client to pay attorney fees in the amount of a portion of a fund recovered or collected is insufficient to establish an equitable lien. *Department of Public Works*, 93 Ill. App. 3d at 394. "A personal contingent fee agreement does not grant an attorney an equitable lien against the fund the client might draw upon to pay attorney's fees." *Department of Public Works*, 93 Ill. App. 3d at 394.

■ The agreement between the Mulders and Burke provided: "We agree to pay you *** an amount equal to one-third (1/3) of [recovery over] $585,000.00." In 1981 this court determined that similar language constituted nothing more than a personal promise by a client to pay his attorney for legal services. *Department of Public Works*, 93 Ill. App. 3d at 394 (the agreement provided that " 'we hereby agree to pay you *** an amount equal to [28% of recovery over $132,200]' "). Because nothing in the agreement at issue indicates that the Mulders assigned an equitable interest in the condemnation fund to Burke, its argument fails.

Assuming, *arguendo*, Burke had an equitable lien on the condemnation fund, the mortgagee's equitable lien was entitled to prior satisfaction. It is well established that a lien which is first in time has priority and is entitled to prior satisfaction out of the property it binds. *First State Bank v. De Kalb Bank*, 175 Ill. App. 3d 812, 817 (1988). Burke correctly states that, when a final judgment has been entered in a condemnation case, an equitable lien on the award is substituted for the mortgagee's lien on the property. *City of Chicago v. Salinger*, 384 Ill. 515, 519 (1943). However, Burke then erroneously states that the mortgagee's lien loses its priority status. Even a cursory reading of *Salinger* (384 Ill. 515) reveals the fallacy of Burke's assertion. Nothing in *Salinger* indicates that a mortgagee's lien loses its priority status after judgment has been entered in a condemnation suit. On the contrary, the Illinois Supreme Court stated that where property is condemned:

> "[T]he mortgagee is entitled to priority of payment to such portion of the award as is necessary to satisfy his lien, [citation] and the lien of such mortgagee upon such fund is superior to that of a judgment creditor subsequent to the date of the mortgage." *Salinger*, 384 Ill. at 519.

Further, the Appellate Court, First District, added that the mortgagee's interest is superior to "the rights of the mortgagor or owner of the property." *Chicago Title & Trust Co. v. City of Chicago*, 321 Ill. App. 271, 275 (1944). Although our supreme court has not expressly included subsequent attorney liens in the list of inferior interests, we find no material distinction between a subsequent attorney's lien and a subsequent judgment creditor's lien. *Salinger*, 384 Ill. at 519.

Burke acknowledges that its lien was created no earlier than August 16, 1992, the day the Mulders and Burke entered into a contingency fee agreement. However, the record reveals that the mortgagee's security interest had attached and was perfected by September 25, 1991, the date on which the last of the four liens was recorded. Applying the principle first in time, first in right, we determine that the mortgagee's security interests were entitled to satisfaction prior to Burke's interest. Accordingly, the trial court erred by ordering the Du Page County treasurer to distribute $109,704.12 to Burke before the mortgagee's lien had been satisfied. *First State Bank*, 175 Ill. App. 3d at 818.

In addition, Burke claims that the mortgagee should not receive the money at issue because the value of the mortgagee's lien has not been adjudicated. We disagree. The record indicates that the trial court ordered the distribution of the remainder of the condemnation award to the Mulders and the mortgagee pursuant to a settlement agreement between the mortgagee, the Mulders, and the State Bank of Caledonia (the Mulders' creditor). The parties agreed that the mortgagee was entitled to $650,000, plus the potential right to recover the entire $109,704.12 previously distributed to Burke. The Mulders and Mulders' creditor were entitled to $40,295.78. Only the mortgagee reserved a right to the disputed sum. Further, the record contains documents and calculations supporting the mortgagee's claim that, on the day the condemnation award judgment was entered, the Mulders owed the mortgagee $879,532.35. Burke cites to nothing in the record which contradicts this evidence. Accordingly, Burke's argument fails.

The appellant filed a motion to strike an affidavit and copies of depositions filed by the appellee. The motion is denied because of mootness.

The judgment of the circuit court of Du Page County is reversed, and judgment is hereby entered in favor of Arthur Jaros, Sr., and against Burke & Ryan in the amount of $109,704.12.

Reversed.

GEIGER and RATHJE, JJ., concur.