In re Ronald LAURIA, Debtor.

Ronald Lauria, Plaintiff,

v.

Titan Security Ltd., Stephen G. Daday, Macor Electric, Defendants.

Bankruptcy No. 99 B 14050.
Adversary No. 99 A 00860.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 2000.

Brenda Porter Helms, The Helms Law Firm, P.C., Wheaton, IL, for Debtor.

Stephen G. Daday, Stitt, Klein, Daday & Aretos, Arlington Heights, IL, for Defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint for turnover filed by Ronald Lauria (the "Debtor") and the response in opposition thereto filed by Stephen G. Daday ("Daday"). The parties have stipulated to some of the facts and relevant documents and waived the opportunity for trial. After review of the papers and arguments of the parties, the Court grants the Debtor's prayer for relief.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a), formerly known as General Rule 2.33(A), of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(E).

### II. FACTS AND BACKGROUND

For a number of years, the Debtor owned some or all of the stock of Titan Security Ltd. ("Titan"), an Illinois corporation, and has, in the past, been employed by Titan. On April 19, 1995, the Debtor, Titan and two other individuals entered into a settlement agreement to resolve controversies among the parties. As part of the agreement, the Debtor sold his interest in Titan back to Titan. The Debtor also entered into a non-competition agreement with Titan, pursuant to which Titan was to pay the Debtor $2,500 per month for ten years, beginning in April 1995, provided that the Debtor did not compete with Titan as indicated by the agreement. Pursuant to the agreements, the checks from Titan were to be made payable to the Debtor and Daday, the Debtor's former attorney, and mailed to Daday.

In December 1997, a judgment was entered on behalf of Macor Electric and against the Debtor. On January 12, 1998, the Circuit Court of Cook County, Illinois, entered an order requiring Titan to turn over $2,000 of the monthly payment due under the non-competition agreement to Macor Electric and the balance of $500 per month to Daday. The order provided that the payments to Macor Electric were to continue until the judgment is satisfied,[1] at which time $2,500 per month shall be paid to Daday.

The Debtor filed this Chapter 13 case on April 30, 1999, and scheduled the unpaid balance owed Daday as a general unsecured debt on his Schedule F. The record does not reveal that Daday appeared at the confirmation hearing or objected before the plan was confirmed. Daday was sent notice of the Debtor's case and the 11 U.S.C. § 341 meeting of creditors set for July 8, 1999, which included the claims bar date set for October 6, 1999, as well as the initial date set for confirmation of the Debtor's Chapter 13 plan set for July 23, 1999. Daday was included in the list of creditors given such notice served by mail on June 23, 1999. The Debtor's amended plan was confirmed on October 15, 1999. The amended plan provides for monthly payments of $319 over a period of 60 months, which will pay 100% of allowed secured and priority claims. Further, the plan provides for payment of 22% to creditors holding general unsecured claims.

According to the Debtor, Daday has received payments of $500 per month from Titan since April 1999. The Debtor filed the instant adversary proceeding for turnover of the funds remaining due under the non-competition agreement. He contends that the debt owed to Daday is an unsecured debt and is not entitled to preferential treatment in bankruptcy. The Debtor concludes that, pursuant to 11 U.S.C. § 541, his interest in the funds is property of the estate and necessary to fund his plan, and pursuant to 11 U.S.C. § 542,

Daday must turnover the funds received from Titan to the Debtor. Daday responds that his claim is secured to the extent of $500 of each monthly payment from Titan, and is subject to his claimed equitable lien for attorney's fees. In the alternative, Daday argues the debt is postpetition arising from the common fund doctrine.

## III. DISCUSSION

### A. Turnover Under 11 U.S.C. § 542

■ The Bankruptcy Code statutory provision for turnover contained in 11 U.S.C. § 542(a) deals with property of the estate to be turned over to the case trustee with the exceptions provided in § 542(c) and (d) and subject to set-off rights referenced in § 542(b) pursuant to 11 U.S.C. § 553. Thus, turnover is not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate. *Marlow v. Oakland Gin Co., Inc. (In re The Julien Co.)*, 128 B.R. 987, 993 (Bankr.W.D.Tenn.1991) (citations omitted), *aff'd*, 44 F.3d 426 (6th Cir.1995). Chapter 13 debtors have been held proper parties to seek turnover of funds to the estate, as the Debtor seeks here. *See, e.g., Sininger v. Fulton (In re Sininger)*, 84 B.R. 115, 117 (Bankr.S.D.Ohio 1988).

■ Relief under § 542(a) is most frequently afforded to case trustees or debtors against creditors who are in actual or constructive possession of the subject collateral at the time the bankruptcy petition is filed, and who do not voluntarily surrender it. *See Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y.1993). Hence, the burden is usually on the trustee or debtor seeking turnover, *Groupe v. Hill (In re Hill)*, 156 B.R. 998, 1006 (Bankr.N.D.Ill. 1993), and the evidence must show that the asset in question is part of the bankruptcy estate. *Mather v. Tailored Fabrics, Inc.*

---

**1.** The order does not state the amount of the judgment in favor of Macor Electric.

*(In re Himes)*, 179 B.R. 279, 282 (Bankr. E.D.Okla.1995) (citation omitted). Only property in which the debtor has an interest that properly becomes part of the bankruptcy estate can be made the subject of an order for turnover under § 542(a). *Cates–Harman v. Stage (In re Stage)*, 85 B.R. 880, 881 (Bankr.M.D.Fla.1988) (citation omitted). It follows that if the debtor does not have the right to possess or use the property at the commencement of a case, a turnover action cannot be used to acquire such rights. *Creative Data Forms, Inc. v. Penn. Minority Bus. Dev. Auth. (In re Creative Data Forms, Inc.)*, 41 B.R. 334, 336 (Bankr.E.D.Pa.1984), *aff'd*, 72 B.R. 619 (E.D.Pa.1985), *aff'd*, 800 F.2d 1132 (3d Cir.1986).

■ Resolution of this matter therefore depends upon whether the post-petition payments from Titan are part of the bankruptcy estate and subject to the turnover requested by the Debtor.

Section 541 of the Bankruptcy Code defines property of the estate in relevant part:

> (a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (6) Proceeds, product, offspring, rents, and or profits of or from property of the estate....

11 U.S.C. § 541(a)(6).

Courts have found that money paid pursuant to a non-competition agreement is property of a debtor's bankruptcy estate. In *In re Schneeweiss*, 233 B.R. 28 (Bankr. N.D.N.Y.1998), the court stated:

> [U]pon executing the Agreement, the Debtor obtained rights to installment payments conditioned upon future adherence to the non-compete covenant contained in the Agreement. Those rights to payment, obtained pre-petition, are property of the estate.... As a re-

sult, the Court concludes that the payments themselves under the Agreement are "sufficiently rooted in the Debtor's pre-bankruptcy past" to constitute property of the Debtor's bankruptcy estate. *Id.* at 31 (citation and footnote omitted). Thus, the payments made by Titan post-petition pursuant to the non-competition agreement are property of the bankruptcy estate.

■ The fact that the Debtor's plan has been confirmed does not prevent the payments from becoming and continuing to be property of the estate, notwithstanding the revesting provisions of the Debtor's plan and the provisions of 11 U.S.C. § 1327(b). This Court has previously held that any property constituting earnings necessary for the implementation of a Chapter 13 plan remains property of the estate after the confirmation of the plan under 11 U.S.C. § 1306(a)(2). *In re Ziegler*, 136 B.R. 497, 500 (Bankr.N.D.Ill.1992) (citing *In re Price*, 130 B.R. 259, 269 (N.D.Ill. 1991)). In *Price*, the court stated:

> [T]here is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, at least to the extent that the debtor's post-confirmation income or other property is committed to the implementation of the plan.

130 B.R. at 269.

Therefore, to the extent that the $500 monthly payments are committed to the implementation of the Debtor's plan, the payments are and continue to be property of the Debtor's estate.

**B.** *The Equitable Lien*

■ The focus then shifts to Daday's claim that he is a secured creditor entitled to collect the subject $500 monthly payment from Titan ahead of the Debtor's claims thereto. Under Illinois law,[2] an

---

2. Bankruptcy courts look to state law to de-

termine whether property is an asset of the

equitable lien may arise where parties express in writing their intention to make a particular property, real or personal, or some fund, the security for a debt, or where there has been a promise to convey or assign the property as security. *In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir.1986). This is based upon an agreement between an attorney and client that amounts to an equitable assignment of part of the fund recovered for the client. *Achs v. Maddox,* 175 Ill. App.3d 989, 993, 125 Ill.Dec. 454, 530 N.E.2d 612, 614 (2d Dist.1988). There are two essential elements of an equitable lien: (1) a debt, duty or obligation owing by one person to another, and (2) a res to which that obligation fastens. *Brass Kettle,* 790 F.2d at 575. In the *Brass Kettle* case, the court stated that, in terms of equitable liens based upon contingent fee agreements, Illinois courts have distinguished between an actual assignment of a portion of the fund and a mere personal promise by the client to pay attorney's fees in an amount equal to a specified portion of the fund to be recovered or out of the proceeds of the fund. *Id.* at 576. Further, the court noted that whether an equitable lien arises out of a contingent fee agreement depends upon the precise language used in the fee agreement. *Id.* Language that is merely a promise by the client to pay the attorney's fees in an amount equal to a specified portion of the fund to be recovered does not create an equitable lien. *Id.*

■ Illinois courts have indicated precisely what language gives rise to an equitable lien and what language does not. For example, an agreement stating that attorneys were to be paid "an amount equal to 28% of the increase obtained from the condemning body over the amount of $132,200.00" did not constitute an equitable assignment, because this agreement merely specified that the amount due as fees would be determined by the amount recovered, not that the attorney would

have rights against the fund recovered. *Achs,* 175 Ill.App.3d at 993, 125 Ill.Dec. 454, 530 N.E.2d at 615. On the other hand, an equitable assignment was created by language stating, "[o]n the total amount recovered up to the sum or value of $65,-000 the fee and payment for services shall be 20 percent thereof." *Id.* A lien arises here because this language created an agreement which imposed the compensation directly upon the res. *Id.* Specifically, the language indicates that the attorneys were to look directly to the fund recovered for payment of their fees and therefore creates an equitable assignment. *Id.* While the precise language of the agreement must be considered, it is not necessary that there be an express written agreement. *Lewsader v. Wal–Mart Stores, Inc.,* 296 Ill.App.3d 169, 179, 230 Ill.Dec. 560, 566, 694 N.E.2d 191, 197 (4th Dist.1998).

■ Daday submitted, as Exhibit C, attached to his proposed submission entitled "Stipulated Issues of Fact and Proposed Conclusions of Law," (not so stipulated by the Debtor or his attorney) a copy of a letter dated April 14, 1995, signed by Daday and the Debtor. In relevant part, this letter states:

> Finally, you [the Debtor] have agreed to pay, and I have agreed to accept the proceeds of the insurance checks in the appropriate amount of ($5,000.00 Five Thousand and No/100 Dollars) executed by you and Titan as a payment on my fee and the sum of $500.00 (Five Hundred and NO/100 Dollars) per month from the checks paid by Titan for the next ten years or until termination of the agreement in the total amount of $65,000.00 (Sixty Five Thousand and NO/100 Dollars).

Although this language does not create a contingent fee agreement, it still meets the requirements of an equitable lien because the language indicates that the Debtor owed a debt to Daday, and that Daday was

estate. *In re K & L Ltd.,* 741 F.2d 1023, 1030 n. 7 (7th Cir.1984).

to look directly to the fund, namely the $500 monthly payments from Titan, for payment of his fees. Therefore, Daday has an equitable lien on the $500 monthly payments from Titan under the non-competition agreement. This does not, however, end the matter because of the res judicata effect of the confirmation order and the language of 11 U.S.C. § 1327.

## C. *The Confirmed Chapter 13 Plan*

The Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." 11 U.S.C. § 1327(a). Moreover, § 1327(c) further provides that:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section *is free and clear of any claim or interest of any creditor provided for by the plan.*

11 U.S.C. § 1327(c) (emphasis supplied).

According to the Code, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A).[3] A claim is defined, in relevant part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5).

■■■■■ All listed creditors are bound by the terms of a confirmed plan. *United States v. Williams (In re Williams)*, 96 B.R. 149, 153 (Bankr.N.D.Ill.1989) (citation omitted). This may be the case even if the creditor did not receive formal, written notice, because creditors must follow the administration of the bankruptcy estate to

determine whether they wish to challenge any aspects of the proceeding. *In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990). A creditor may not stick its head in the sand, pretending that it will not lose any rights by not participating in the bankruptcy proceedings. *Id.*

■■■■■ Section 1327(a) of the Bankruptcy Code, because it provides that a confirmed plan binds all creditors, creates a res judicata effect that prevents the bankruptcy court from reconsidering matters that were disposed of by the confirmed plan. *Strong v. I.R.S. (In re Strong)*, 203 B.R. 105, 113 (Bankr.N.D.Ill. 1996). The failure to raise an objection at the confirmation hearing or to appeal from the confirmation order should preclude a creditor from attacking the plan or any provision therein in a subsequent proceeding. *Id.* This applies to Daday who was scheduled as a creditor, albeit listed by the Debtor as unsecured, rather than secured. Daday was sent notice of the confirmation hearing, but he did not object to confirmation of the Debtor's plan which was confirmed.

■■■■■ Procedurally, a secured creditor seeking distribution through the payments made to the standing trustee from a Chapter 13 estate must file a proof of claim. Bankruptcy Rule 3021 states that distributions pursuant to plans may be made only to creditors whose pre-petition claims are allowed after confirmation. An allowed claim under 11 U.S.C. § 502 is one filed pursuant to 11 U.S.C. § 501, and therefore, for both secured and unsecured claims to be paid, they must be allowed after being filed under § 501. Therefore, as a practical matter, a secured creditor must file a claim to participate in and receive distributions under a Chapter 13 plan from the standing trustee. *Id.* at 112. Sometimes, debtors propose to pay secured creditors directly, rather than

---

**3.** Sections 101(10)(B) and (C) contain additional definitions of "creditor" which are not relevant to the discussion here.

through plan payments they make to the standing Chapter 13 trustee, which are in turn remitted to creditors. The amended plan confirmed here did not specify such direct payments from the Debtor to Daday.

■ It is undisputed that Daday is a creditor of the Debtor. In the parties' Joint Pretrial Statement submitted to this Court on October 20, 1999, in the section of admitted facts is the statement, "The Defendant [Daday] is a creditor of the plaintiff debtor." *See* Joint Pretrial Statement at p. 2. Even had this not been included in the Pretrial Statement, it is clear that Daday is a creditor. The Debtor admittedly owes Daday for legal services rendered, and Daday is seeking to get paid the fees due him and assert his equitable lien.

Because Daday is a creditor of the Debtor, he is bound by the Debtor's plan. The plan provides for payment of 22% on all general unsecured claims and payment in full on secured claims. Because Daday did not object to the confirmation of the Debtor's Chapter 13 plan, Daday is bound by the plan as he was given notice of the initial confirmation hearing scheduled in the bankruptcy case.

### D. *The Common Fund Doctrine*

■ Daday alternatively argues for application of the common fund doctrine. The common fund doctrine is an exception to the general rule that, absent a contractual or statutory obligation, a successful party may not recover attorney's fees or costs, and a third party who benefits from an attorney's services has no duty to pay the attorney. *Village of Clarendon Hills v. Mulder*, 278 Ill.App.3d 727, 732, 215 Ill.Dec. 424, 428, 663 N.E.2d 435, 440 (2d Dist.1996). The Illinois Supreme Court has explained the common fund doctrine:

The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation ex-

penses incurred, including counsel fees. It is now well established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." The underlying justification for reimbursing attorneys from a common fund ... is that, unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts.

The common fund doctrine is a common law rule of general application.... It applies generally to all funds created, increased or preserved by a party in which others have an ownership interest.

[T]he common fund doctrine has been applied in many types of cases covering a large range of civil litigation. The doctrine is most frequently applied in class actions brought by, and on behalf of, creditors, taxpayers, public utility customers, trust beneficiaries, decedents' estates, labor union members, and shareholders of corporations.

*Scholtens v. Schneider*, 173 Ill.2d 375, 385–88, 219 Ill.Dec. 490, 495, 671 N.E.2d 657, 662–64 (1996) (citations omitted).

■ An attorney may recover attorney's fees under the common fund doctrine if: (1) the legal services created, preserved or increased the fund from which fees are sought, (2) the claimant of the fund did not participate in its creation, preservation or growth, and (3) the claimant benefitted or will benefit from the fund. *Mulder*, 278 Ill.App.3d at 732, 215 Ill.Dec. at 429, 663 N.E.2d at 440. Because it is an exception to the general rule, the common fund doctrine must be narrowly construed, and Illinois courts have refused to extend it to debtor/creditor relationships. 278 Ill.App.3d at 733, 215 Ill. Dec. at 429, 663 N.E.2d at 440. The doctrine has been limited to cases involving subrogor/subrogee relationships, where the attorney's right to payment was dependent upon a plaintiff's recovery against a

third party, not simply a debtor/creditor relationship. *Id.*

A debtor/creditor relationship is exactly what exists here between the Debtor and Daday. Daday is simply seeking payment for his legal fees incurred by the Debtor when Daday represented him. Additionally, if the monthly payments to the Debtor can be considered a fund, the Debtor clearly participated in its creation; he hired Daday to assist him in obtaining these payments from Titan. Because the Debtor and Daday are in a debtor/creditor relationship, the common fund doctrine is inapplicable.

## IV. *CONCLUSION*

For the foregoing reasons, the Debtor's request for turnover of the subject monthly payments is granted.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021. The parties have this date belatedly submitted an Agreed Settlement Order which the Court will enter and approve in light of the foregoing findings and conclusions.