**In re Bob OKON, Debtor.**

**No. 02 B 46207.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 15, 2004.

Joseph E. Cohen, Linda M. Kujaca, Cohen & Krol, Chicago, IL, for Trustee.

James E. McCoy, Addison, IL, for Debtor.

## MEMORANDUM OPINION

A. BENJAMIN GOLDGAR,
Bankruptcy Judge.

This chapter 7 case came before the court on the motion for turnover filed by Trustee Joseph Cohen against debtor Bob Okon. Alleging that the debtor wrongly sold property belonging to the bankruptcy estate and then pocketed the proceeds, the trustee sought an order under section 542 of the Bankruptcy Code, 11 U.S.C. § 542, requiring the debtor to turn the proceeds over. The court held an evidentiary hearing at which only the debtor and the trustee testified.

The court now makes the following findings of facts and conclusions of law. Because the trustee failed to prove that most of the property sold was in fact property of the estate, and because the trustee failed to show what part of the sale proceeds might be attributable to the only item that was property of the estate, the motion for turnover will be denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the district court's Internal Operating Procedure 15(a). This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(E); *see In re Boston Regional Med. Ctr.*, 265 B.R. 645, 650 (Bankr.D.Mass.2001) (proceeding seeking turnover is core). The court accordingly may enter a final judgment. *In re Smith,* 848 F.2d 813, 816 (7th Cir.1988).

### 2. Findings of Fact

Debtor Bob Okon is married to Judy Okon and lives in Barrington, Illinois. (Tr. at 9, 21). The Okons were married in 2000. (Tr. at 33). From roughly 1983 until 2003, Okon owned a house at 153 Deer Lane, Barrington. (Tr. at 10–11, 12–13; Trustee's Ex. 1).

On November 22, 2002, Okon filed a petition seeking relief under chapter 7 of the Bankruptcy Code. Schedule A to the petition listed the Deer Lane house as real property in which Okon alone had an interest. (Tr. at 12; Trustee's Ex. 1). The property was valued at $550,000. (Tr. at 11; Trustee's Ex. 1). Schedule B listed the following personal property in which Okon alone had an interest: cash, clothing, jewelry, a jeep, a boat, and certain undefined "household goods." (Trustee's Ex. 2). The household goods were valued at $2,500. (*Id.*). Schedule B listed no personal property in which Mrs. Okon also held an interest, although the instructions sought that information. (*Id.*).

When the petition was filed, an initial meeting of creditors was automatically scheduled by the clerk of the court for January 16, 2003 with Trustee Joseph E. Cohen, *see* 11 U.S.C. § 341. (Petition at 1). Okon failed to appear at the meeting. (Tr. at 15, 36). A continued meeting was scheduled for February 20, 2003. (Tr. at 15–16). Again, Okon failed to appear. (Tr. at 15–16, 36). Only after Trustee Cohen sought and received an order from the court compelling Okon's attendance pursuant to Bankruptcy Rule 2004 did Okon appear to be examined about his affairs. (Tr. at 16, 36).

The examination took place on March 25, 2003. (Tr. at 36). During the examination, Okon disclosed that he and his wife had sold the Deer Lane house for $510,000 on February 14, 2003, about three months after he filed bankruptcy and five weeks before the examination. (Tr. at 12–13, 37). No notice of the sale was given to the trustee, nor was authorization for the sale ever sought from the court. (Tr. at 13, 38). The sales price was $45,000 less than the value Okon listed on his schedules. (Tr. at 38). The trustee opined that had he been given the chance to sell the house, he could have obtained a better price and could have made a meaningful distribution to Okon's creditors. (Tr. at 38–39, 41).

Also sold on the same date to the same buyers were five items of personal property that are the center of the current dispute: a wooden swing set, a swing chair, a refrigerator, a freezer and a "Simplicity" brand garden tractor. (Tr. at 17–18; Trustee's Ex. 4). The sales price was $10,000. (Tr. at 17, 39; Trustee's Ex. 4). Okon and Mrs. Okon together as "seller" signed a rider to the real estate contract memorializing the sale of these items. (Trustee's Ex. 4). Again, neither the trustee nor the court authorized the sale. (Tr. at 39).

In payment for the personal property, the buyers gave Okon (not Okon and Mrs. Okon) a check for $10,000. (Tr. at 20–21). Okon deposited the funds in an account at Foster Bank for a business called "Danti Products." (Tr. at 21–23). Okon's name was the only other name on the account, and he alone controlled it. (Tr. 23). He testified, however, that he and his wife had no other bank account at the time. (*Id.* at 23). According to Okon, none of the $10,000 remains: the Okons used it as a security deposit for the apartment they are currently renting. (Tr. at 24–25).

Okon testified that four of the five items sold belonged to his wife: the swing set (which she uses in the children's day care business she has operated from her residence for the past 28 years), the swing chair (actually part of the swing set), the refrigerator, and the freezer. (Tr. at 17–18, 19–20, 27, 28–31). Each of these items, Okon said, had been Mrs. Okon's property before the marriage, and she had brought them to the Deer Lane house after the marriage. (Tr. at 20, 27–28, 29–31). Only the garden tractor was Okon's property. (Tr. at 20, 27–28, 31–32, 34). He bought the tractor ten or fifteen years earlier for about $2,000. (Tr. 31, 24). No evidence was offered of its current value.

### 3. Conclusions of Law

The question here is whether the five pieces of personal property the Okons sold were property of Okon's bankruptcy estate under 11 U.S.C. § 541, so that the proceeds from their sale must be turned over to the trustee. The answer as to four of them is no: the evidence shows those items belonged to Mrs. Okon and remained hers after the marriage. As to the fifth item, the answer is yes. But the evidence supplies no basis for the court to determine what portion of the proceeds is attributable to the sale of that item. The trustee's motion for turnover will therefore be denied.

The filing of a bankruptcy petition creates an estate consisting of the debtor's property. 11 U.S.C. § 541(a). The Code's definition of property is "expansive," *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1343 (7th Cir.1987), encompassing "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1). Under this definition, "virtually all property of the debtor" becomes property of the estate. *In re Yonikus,* 996 F.2d 866, 869 (7th

Cir.1993). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Id.*

Whether a debtor has an interest in property in the first place, however, is a matter of state law. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Sacramento Real Estate Corp. v. First Chicago Bank (In re Sacramento Real Estate Corp.),* 201 B.R. 225, 232 (Bankr.N.D.Ill.1996). When the question before the court concerns the relative rights of a debtor in bankruptcy and the debtor's non-debtor spouse to particular property, state law on marital property must be consulted. *Ludwig v. Geise (In re Geise),* 132 B.R. 908, 911–12 (Bankr. E.D.Wis.1991); *Rinehart v. Meek (In re Grady),* 128 B.R. 462, 464 (Bankr.E.D.Wis. 1991).

The state law applicable here is the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/101 *et seq.* (2002). Under section 503(a) of the Act, "marital property" (with certain exceptions not relevant to this case) consists of "all property acquired by either spouse subsequent to the marriage." 750 ILCS 5/503(a) (2002). Both spouses therefore have an interest in property acquired after they are married, and the property would be subject to equitable distribution upon their divorce. *In re Rosenzweig,* 245 B.R. 836, 842 (Bankr.N.D.Ill.2000). Where one

spouse acquires property before the marriage, on the other hand, the other spouse has no interest in it. The property belongs to the acquiring spouse alone. *See, e.g., In re Marriage of Philips,* 200 Ill. App.3d 395, 400–01, 146 Ill.Dec. 191, 558 N.E.2d 154, 157–58 (1st Dist.1990) (condominium husband purchased before marriage was not marital property but remained property of husband).

As Trustee Cohen acknowledged (Tr. at 7), the burden of proof in a turnover proceeding falls on the trustee. *Helms v. Roti (In re Roti),* 271 B.R. 281, 291 (Bankr.N.D.Ill.2002); *Lauria v. Titan Security, Ltd. (In re Lauria,)* 243 B.R. 705, 708 (Bankr.N.D.Ill.2000). To prevail, the trustee must prove that the property at issue is part of the bankruptcy estate.[1] *Roti,* 271 B.R. at 291; *Lauria,* 243 B.R. at 708. It was therefore the trustee's burden here to demonstrate *either* that Okon acquired the personal property before the marriage *or* that Okon or Mrs. Okon acquired the property during the marriage, *see* 750 ILCS 5/503(a) (2002).

The trustee failed to meet this burden. To show the property belonged to Okon, the trustee offered circumstantial evidence that (1) Okon signed the rider that served as a bill of sale for the personal property; (2) the $10,000 payment for the property was made to Okon; and (3) the payment was deposited in a bank account Okon controlled. The second and

---

1. Courts differ over whether the burden must be met by the usual standard of preponderance of the evidence or by the more exacting standard of "clear and convincing evidence." A turnover order under the Bankruptcy Act required proof by clear and convincing evidence, *Maggio v. Zeitz,* 333 U.S. 56, 64, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *Gorenz v. Illinois Dep't of Agriculture,* 653 F.2d 1179, 1184 (7th Cir.1981), and some courts hold that the same standard applies under the Code, *see, e.g., Redfield v. Peat, Marwick,*

*Mitchell & Co. (In re Robertson),* 115 B.R. 613, 620 (Bankr.N.D.Ill.1990). Citing recent Supreme Court decisions such as *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), other courts have concluded that the preponderance standard applies. *See, e.g., Alofs Manuf. Co. v. Toyota Manuf. Co. (In re Alofs Manuf. Co.),* 209 B.R. 83, 89–91 (Bankr.W.D.Mich.1997). Since the trustee here has not even satisfied the more lenient standard, the court need not reach this issue.

third circumstances, however, are easily explained away. The payment was made to Okon because it was to be deposited in a bank account Okon controlled. And the payment was to be deposited in that account because, as Okon testified, it was the only account he and his wife maintained at the time. That leaves the rider as the sole evidence suggesting Okon might have had an interest in the property.[2]

Okon, meanwhile, testified directly and in some detail that Mrs. Okon had acquired all of the items except the tractor (which he admitted was his) before the Okons were married in 2000, that the items had been located at her house before the marriage, and that she had brought them to the Deer Lane house only after the marriage. Based on Okon's demeanor in testifying, as well as on the form and content of his testimony, the court finds his testimony credible. The trustee offered no evidence contradicting what Okon said.

Trustee Cohen did go to some lengths to attack Okon's credibility. Thus, the trustee introduced evidence that Okon's bankruptcy petition and schedules were substantially incomplete and inaccurate. He showed that Okon twice failed to attend creditors meetings and did not appear to be examined until the court compelled him to do so. And the trustee showed that after Okon filed bankruptcy, he up and sold his house—which was property of the bankruptcy estate and not his to sell—without any notice to the trustee or authorization from the court. Only after the court compelled Okon's appearance did he disclose his sale of the house for what the trustee asserted was a bargain price, resulting in no distribution to Okon's creditors.[3]

The court agrees with Trustee Cohen that Okon's conduct in this case was highly suspect. Okon filed schedules that were false—perhaps intentionally so—and played fast and loose with the bankruptcy process, cheating his creditors in the process. It may well be that Okon's character is questionable, and that on many matters he cannot be believed. That Okon's credibility is doubtful on some matters, however, does not mean it is doubtful on all. Even scoundrels tell the truth sometimes, and despite the evidence the trustee brought to light casting doubt on Okon's truthfulness generally, Okon appeared to be telling the truth about his wife's ownership of the personal property.

One other evidentiary point deserves mention. At times, it appeared that the trustee was attacking Okon's credibility, not just for purposes of impeachment, but actually to establish ownership of the property by negative inference. The trustee seemed to be taking the position that because Okon's testimony was unbelievable, the court could infer that the property

---

2. In addition to this evidence, the trustee repeatedly remarked on Mrs. Okon's unexplained absence from the hearing, although Okon had listed her as a witness. (Tr. at 19–20, 45, 47). In doing so, the trustee may have been invoking the "missing witness" rule, which permits an inference of unfavorable testimony to be drawn when a witness fails to testify. See *Littlefield v. McGuffey*, 954 F.2d 1337, 1346 (7th Cir.1992). The inference, however, may only be drawn when the witness is effectively unavailable to the opposing party. *Id.* at 1346–47. Mrs. Okon was available to the trustee, and he could have called her as his own witness. The court therefore will not infer that had she been called, Mrs. Okon would have testified she did not in fact own the property in question.

3. Suspicious, as well, was Okon's sale of two used household appliances, a ten-year old swing set, and an aging garden tractor for $10,000, a considerable sum. Equally questionable was Okon's claim that he no longer had the $10,000 because he used it as a "security deposit" on an apartment. The apartment must be palatial.

really belonged to Okon. (*See, e.g.,* Tr. at 49).

■ If that was indeed the trustee's position, it is worth noting that he was mistaken. A party satisfies his burden of proof (in the sense of his burden of going forward) "by introducing evidence sufficient to support the findings of fact that are necessary if [he] is to prevail." 1 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 64 at 317 (2nd ed.1994). The burden cannot be met by discrediting the opposing party's contrary testimony. Although a trier of fact can disregard testimony that has been discredited, "the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Goldberg Securities, Inc. v. Scarlata (In re Scarlata),* 127 B.R. 1004, 1011 (N.D.Ill.1991).

To carry his burden of proof here, then, it was incumbent on the trustee to produce evidence *affirmatively* showing that the property in question was Okon's in whole or in part, not Mrs. Okon's exclusively, and so became property of the bankruptcy estate. Impeachment of Okon's testimony that the property belonged to Mrs. Okon, even if successful, would not have helped the trustee satisfy that burden. *Securities & Exchange Comm'n v. Amster & Co.,* 762 F.Supp. 604, 616 (S.D.N.Y.1991) ("The difficulty with the SEC's approach is that it cannot establish a factual proposition upon which it bears the burden of proof by attacking the credibility of witnesses whose testimony negates the proposi-

tion."); *Marzullo v. Comm'r,* 73 T.C.M. (CCH) ¶ 52,082 at 2999 (T.C.1997) ("Respondent's burden of proof ... cannot be satisfied simply by attacking Mrs. Marzullo's credibility").

Because the trustee failed to meet his burden of proving that the swing set, swing chair, refrigerator, and freezer were property of the bankruptcy estate, the motion for turnover as to those items will be denied.[4]

■ That leaves the garden tractor. Okon admitted that he bought the tractor before the marriage, and he admitted that he still owned it when he filed his petition. The tractor was therefore property of the estate. 11 U.S.C. § 541(a). If those were the only facts here, the trustee would plainly be entitled to an order under section 542 requiring Okon to turn the tractor over.

Matters, however, are not so simple. The garden tractor was sold along with the other property in March 2003. Okon cannot produce a tractor he no longer has. Even so, the trustee would be entitled to an order requiring Okon to turn over the portion of the $10,000 in sale proceeds attributable to the tractor—if there were some way of knowing what that portion is. Unfortunately, there is none. Okon testified that he originally bought the tractor roughly ten years ago for something like $2,000. It has presumably depreciated considerably in value since then. But the trustee offered no evidence of the tractor's current value, evidence that could give the court some basis for ruling in his favor.

---

4. The trustee's evidence here would, of course, go a long way toward denying Okon a discharge under several subsections of section 727, 11 U.S.C. § 727. The trustee in fact brought an adversary complaint objecting to Okon's discharge on the basis that Okon concealed or destroyed records, failed to produce records to the trustee, and transferred property post-petition with the intent to hinder, delay or defraud creditors. 11 U.S.C. §§ 727(a)(2)(B), (a)(3), (a)(4)(D). Rather than contest the trustee's allegations, Okon wisely chose to waive his discharge.

Without evidence, any value the court might assign would be a guess, no better than a shot in the dark. Guessing is not considered a legitimate method for valuing property. *See In re Pilavis,* 233 B.R. 1, 8 n. 55 (Bankr.D.Mass.1999) (deriding valuations as "guesses" for which "no basis was provided"); *In re Tsunis,* 29 B.R. 527, 531 n. 3 (Bankr.E.D.N.Y.1983) (rejecting valuation "based on supposition and conjecture").

Because the trustee failed to meet his burden of showing what portion of the sale proceeds was attributable to the garden tractor, his motion for turnover as to the tractor will also be denied.

### 4. Conclusion

The trustee's motion for turnover is denied. A Rule 9021 judgment will be entered in accordance with this opinion.