RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

In re: SHELBYVILLE ROAD SHOPPES, LLC,

*Debtor.*

───────────────────────────────

WILLIAM W. LAWRENCE, as the Trustee for the
Estate of Shelbyville Road Shoppes, LLC,

*Appellant,*

*v.*

COMMONWEALTH OF KENTUCKY TRANSPORTATION
CABINET,

*Appellee.*

No. 14-5197

─────────────

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:13-cv-00971—Charles R. Simpson III, District Judge.

Argued: October 2, 2014

Decided and Filed: January 5, 2015

Before: GUY, ROGERS, and DONALD, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:** Robert W. Adams, III, ADAMS LAW GROUP, Louisville, Kentucky, for
Appellant. Bradley S. Salyer, MORGAN & POTTINGER, Louisville, KY, for Appellee. **ON
BRIEF:** Robert W. Adams, III, ADAMS LAW GROUP, Louisville, Kentucky, for Appellant.
Bradley S. Salyer, MORGAN & POTTINGER, Louisville, KY, for Appellee.

1

_____

**OPINION**

_____

ROGERS, Circuit Judge.   This case involves whether a Chapter 7 bankruptcy debtor's trustee can bring into the bankruptcy estate a "good faith" deposit made by the debtor's assignor with respect to a proposed real estate purchase from the Commonwealth of Kentucky.   The trustee, William Lawrence, seeks the return of a good faith deposit paid by Eagle Development, LLC to the Commonwealth of Kentucky Transportation Cabinet as part of a Purchase Agreement for the purchase of land entered into on July 18, 2007.   Eagle Development later assigned the Purchase Agreement to the debtor, Shelbyville Road Shoppes, LLC.   Two days before the expiration of the Purchase Agreement's closing period, the debtor voluntarily filed for Chapter 7 relief, which led to the Agreement's deemed rejection pursuant to 11 U.S.C. § 365(d)(1).   The trustee subsequently requested return of the deposit in bankruptcy court, claiming that the deposit constituted "property" of the bankruptcy estate under 11 U.S.C. § 541, and was thus subject to turnover under 11 U.S.C. § 542.   Both the bankruptcy court and the district court rejected the trustee's turnover request.   Because the debtor did not possess either a legal or an equitable property interest in the good faith deposit at the time the debtor filed a voluntary petition for Chapter 7 relief, the district court properly rejected the trustee's turnover request.

On July 18, 2007, a "Purchase Agreement – Public Sale" was entered into between Eagle Development, LLC and the Commonwealth of Kentucky Transportation Cabinet, in which Eagle agreed to pay the sum of $4,812,874.65 to purchase certain property in Louisville, Kentucky owned by the Cabinet.   Pursuant to the Agreement, Eagle paid a good faith deposit to the Cabinet in the sum of $962,574.93.   The check was made payable to "KY STATE TREASURER."   It was later deposited into a non-interest bearing account maintained by the Kentucky Finance and Administration Cabinet.   On August 8, 2007, the Agreement was assigned by Eagle to Shelbyville Road Shoppes, LLC, the bankruptcy debtor in this case.

The Agreement provides:

As required by the terms of this sale, a good faith deposit is hereby made in the amount of $962,574.93 to be held in a special deposit trust fund by the

Transportation Cabinet, Division of Right of Way & Utilities, pending the arrangement of a closing date to be no sooner than 60 days from the date written notice is given by Transportation Cabinet to Purchaser, unless otherwise agreed upon by the Purchaser and Transportation Cabinet, at which time, upon delivery of the deed, the balance of $3,850,299.72 will be due and payable. The conveyance will be by Special Warranty Deed.

. . . The Purchaser agrees that the above mentioned good faith deposit will be forfeited to the Seller as liquidated damages is [sic] the Purchaser fails to consummate this sales transaction as agreed herein.

On July 13, 2009, the debtor and the Cabinet executed an addendum to the Agreement that, in pertinent part, extended the deadline for the "Purchaser to complete the acquisition of the subject property for one (1) year . . . in order to allow the Purchaser to seek any requested change in the current zoning of the property." The addendum further provided for one additional six-month extension beyond the one year period, subject to the "approval and at the discretion of both the Purchaser and Seller."

On January 11, 2011, two days before the expiration of the eighteen-month extension to close the transaction, the debtor filed a voluntary petition for Chapter 7 relief. William W. Lawrence was appointed as Chapter 7 trustee for the bankruptcy estate.

The trustee initiated proceedings in the bankruptcy court on May 23, 2012, seeking return of the good faith deposit from the Cabinet to the bankruptcy estate. *Lawrence v. Ky. Transp. Cabinet* (*In re Shelbyville Rd. Shoppes, LLC*), No. 11-30124, 2013 WL 2422669, at *1 (Bankr. W.D. Ky. June 3, 2013). The trustee "alleg[ed] causes of action against the Cabinet on four separate theories: Count I – Turnover of Property to the Estate pursuant to 11 U.S.C. §§ 541 and 542; Count II – Fraud in the Inducement; Count III – Breach of Contract; and Count IV – Unenforceable Penalty." *Id.* In response to the Cabinet's motion for partial summary judgment on the pleadings, the bankruptcy court entered an order on February 21, 2013, granting the motions as to Counts II, III, and IV. *Id.*

The trustee filed a subsequent Motion for Partial Summary Judgment with respect to Count I. The bankruptcy court denied the motion and dismissed Count I. *Id.* at *1, *6. The bankruptcy court found that neither the terms of the Agreement nor applicable state law granted the debtor the right to have the good faith deposit returned. The court reasoned that since the

debtor did not have "the right to obtain the Deposit" at any time "during the case up to the filing of the turnover action," the trustee could not compel the Cabinet to turn over the deposit. *Id.* at *5.

The trustee timely appealed the bankruptcy court's dismissal to the district court, contending that the debtor possessed a sufficient legal and equitable property interest in the deposit to justify the trustee's § 542 turnover demand. The district court affirmed the bankruptcy court's dismissal, finding: (1) that the debtor had no right to possess or use the deposit prior to filing for Chapter 7 relief, and thus the trustee had no right to request turnover pursuant to § 542; (2) that the good faith deposit was not held in escrow; (3) that the transaction was not a contract for deed; and (4) that the debtor did not retain an equitable right to the deposit as a vendee. *Lawrence v. Ky. Transp. Cabinet*, No. 3:13CV-971-S, 2014 WL 297868, at *4−5 (W.D. Ky. Jan. 27, 2014).

This appeal followed. The trustee contends that the deemed rejection of the Agreement pursuant to § 365(d)(1)—a provision that relieved the debtor and the Cabinet from having to perform the Agreement's then-executory portions—also eliminated, through the rejection of the then-executory forfeiture clause, any contractual rights the Cabinet had to the deposit. As a result, the debtor has the only legal or equitable property interest remaining in the deposit, and the trustee is therefore entitled to demand turnover of the deposit pursuant to § 542.

The trustee's appeal fails because the trustee does not have a right to demand turnover of the deposit pursuant to 11 U.S.C. § 542. The deposit is not part of the bankruptcy estate under 11 U.S.C. § 541. Section 542(a) provides:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property.

11 U.S.C. § 542(a). "[F]undamental to the concept of 'Turnover' is that the asset to be turned over must be property of the debtor's bankruptcy estate." *French v. Johnson* (*In re Coomer*), 375 B.R. 800, 803−04 (Bankr. N.D. Ohio 2007) (internal citation omitted). "Section 542(a) is best viewed as an enabling provision, allowing the trustee to obtain possession of property *only* where the debtor otherwise had a right to possess the property." *Id.* at 806 (emphasis added). "It

is axiomatic that a trustee's interests and rights in property are limited by and to the rights and interests of the debtor in that property." *Slone v. Vallo* (*In re Starr*), No. 09-37457, 2011 Bankr. LEXIS 947, at *11−12 (Bankr. S.D. Ohio 2011).

Here, the deposit is not part of the debtor's bankruptcy estate because at the time the debtor filed a voluntary petition for Chapter 7 relief, the debtor had no "present right" to possess the deposit, and thus no legal or equitable interest in it. A bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a)(1) (emphasis added). Though courts broadly construe the term "interests," "[t]he majority of lower courts that have considered whether a trustee can compel the turnover of funds where a debtor has *no present right* to the funds have prohibited the turnover because the trustee's claim to estate property is no greater than the debtor's claim at the time of filing." *Lyons v. St. Emps. Ret. Sys. of Ill.* (*In re Lyons*), 957 F.2d 444, 445 (7th Cir. 1992) (internal citations omitted) (emphasis added). As the bankruptcy court noted in *Lauria v. Titan Sec. Ltd.* (*In re Lauria*), 243 B.R. 705 (Bankr. N.D. Ill. 2000), "if the debtor does not have the right to possess or use the property at the commencement of a case, a turnover action cannot be used to acquire such rights." *Id.* at 709.

On January 11, 2011, the date the debtor filed for Chapter 7 relief, the debtor's sole property interest was in the Agreement, not the deposit. The debtor had a present interest in an executory contract, an interest that, upon payment of the balance owed, afforded the debtor the right to own specified property. Pursuant to the terms of the Agreement, the debtor also retained a limited, conditional interest in a credit of the deposit towards the balance of the purchase price at closing. The debtor would forfeit any interest in the deposit as liquidated damages upon failure to consummate the property sale.

The debtor did not retain a stand-alone interest in the deposit itself. The deposit had been made to secure the Agreement. Once the Agreement had been secured, therefore, the debtor's remaining interests in the deposit were limited solely to those prescribed by the terms of the Agreement, which did not set forth any circumstances under which the debtor would have had a right to a refund of the deposit prior to filing the bankruptcy petition. Because the debtor had no

right to possess the deposit as of January 11, 2011, the deposit did not constitute property of the estate subject to turnover.

Numerous cases illustrate that trustees may not use bankruptcy proceedings to seek turnover of property that the debtor had no right to possess at the filing of the petition. For instance, in *Lyons*, a debtor claimed an exemption of her State Employees' Retirement System ("SERS") contributions in her Chapter 7 bankruptcy petition. *In re Lyons*, 957 F.2d at 445. Employees were permitted to withdraw their contributions "only upon termination of employment, retirement, or disability." *Id.* The trustee filed a complaint in the bankruptcy court seeking turnover of the debtor's contributions pursuant to § 542. *Id.* The Seventh Circuit held that "[e]ven if Lyons' contributions to SERS are property of her estate, she has no right to a distribution of the funds until her termination of employment, retirement or disability. Therefore, because Lyons has no *present right* to withdraw her contributions, neither does the Trustee." *Id.* at 445−46 (emphasis added). The bankruptcy court in *In re Coomer* similarly rejected the trustee's turnover request for the debtor's residential security deposit because the debtor's "'interest' in the funds held by the Defendant, as security, included no present right of possession." 375 B.R. at 805−06.

This analysis is similar to that of the bankruptcy court in *In re Westfields Apartments, LLC*, No. 08-12573, 2010 WL 2179622, at *1 (Bankr. S.D. Ga. 2010). The debtor in that case entered into an agreement with Georgia Heritage to purchase property in Augusta, Georgia. Pursuant to the Sales Contract and numerous addenda, the debtor then deposited $175,000 in earnest money with sales broker Blanchard and Calhoun Real Estate Company. *Id.* at *2. In a subsequent addendum to the contract, the debtor further agreed that should the debtor terminate the agreement or fail to close by the specified date, the nonrefundable deposit would be forfeited.[1] *Id.* at *2, *5. The debtor then filed for Chapter 11 bankruptcy one day before the

---

[1]In language similar to the forfeiture clause in the trustee's case here, the addendum provided:

On or before October 15, 2008, Purchaser shall either give Seller written notice of his [sic] election to terminate this agreement, in which event the $175,000 in nonrefundable deposits shall be paid over to Seller and neither party shall have any further obligation under the Sales Contract, or Purchaser shall commit to close the purchase of the Property on or before November 15, 2008. If Purchaser fails to close the Purchase on or before November 15, 2008, then this Contract shall be terminated and the $175,000 in nonrefundable deposits shall be turned over to Seller.

*Id.* at *2.

final amended closing and the trustee sought classification of the earnest money held in escrow as property of the estate. *Id.* at *3, *5.

In concluding that the funds the debtor had deposited in escrow were not property of the estate, the *Westfields* court noted that "there were no circumstances under which the Debtor was entitled to distribution of the Funds under the Sales Contract . . . [a]s of the petition date." *Id.* at *5. "[T]he Funds were to be paid over to Georgia Heritage regardless of whether the Sales Contract closed." *Id.* As the bankruptcy court noted in the instant case, the *Westfields* court "distinguished the cases cited by the debtor which had held that escrow funds were property of the estate because, in those cases, those debtors had a right to return of the funds upon the occurrence of a condition specified in their respective contracts." *In re Shelbyville Rd. Shoppes*, No. 11-30124, 2013 WL 2422669, at *5 (citing *In re Westfields Apartments*, No. 08-12573, 2010 WL 2179622, at *5 n.7).

Here, like the sales contract in *Westfields*, the Agreement did not indicate any circumstances under which the debtor would be entitled to a refund of the deposit as of the petition date. Because the closing date had not yet arrived and neither party was yet in breach, the debtor's interest in the deposit—an interest established by the terms of the Agreement—was limited to applying the funds to offset the purchase price.

It is true, as the trustee contends, that § 541 does not require that the property interest be immediately enforceable for that interest to become property of the bankruptcy estate. Courts permit turnover actions based on "future and nonpossessory interest[s] maintained by a debtor in property held by another." *In re Coomer*, 375 B.R. at 804. However, the cases on which the trustee relies for the proposition that the scope of "property" under § 541(a) includes a debtor's contingent, equitable, and non-possessory property interests are easily distinguished. For instance, in *Segal v. Rochelle*, 382 U.S. 375 (1966), the Supreme Court held that loss-carryback refund claims constituted "property" of a debtor's bankruptcy estate. *Id.* at 381. The Court reasoned that even though the debtor would not have been able to immediately possess the refund, the interest was "sufficiently rooted in the pre-bankruptcy past" to permit its inclusion in the estate. *Id.* at 380; *see also Booth v. Vaughan (In re Booth)*, 260 B.R. 281, 289 (B.A.P. 6th Cir. 2001). While in *Segal* the debtor's interest in the loss-carryback refund arose, in part, due to

taxes paid and operating income earned (or in this case, not earned) *prior to* the debtor's filing for bankruptcy, here the trustee cannot point to any activity "sufficiently rooted in the pre-bankruptcy past" to justify inclusion of the deposit in the bankruptcy estate.

Similarly, in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), a trustee sought the turnover of property seized by a lien creditor prior to the debtor's bankruptcy petition. *Id.* at 200−01.  The Court held that a trustee may compel turnover of such property even if, at the commencement of the bankruptcy proceedings, the debtor only retained a right of redemption. *Id.* at 209.  A tax sale provision that "refer[red] to the debtor as the owner of the property after the seizure but prior to the sale," proved crucial to the Court's decision.  *Id.* at 211.  Unlike the debtor in *Whiting Pools*, who remained, by law, the owner of the seized property until its sale to a bona fide purchaser, the debtor here retained no similar ownership interests.  And while the debtor in *Whiting Pools* could have obtained the property through legal process, the debtor in this case had no legal recourse pre-petition to obtain a refund of the deposit.

Ultimately, the debtor relinquished even the limited, contractual interest in a credit of the deposit upon the deemed rejection of the Agreement pursuant to 11 U.S.C. § 365(d)(1).  Section 365(d)(1) provides:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract . . . is deemed rejected.

In this case, the deemed rejection of the Agreement relieved the debtor and the Cabinet from having to perform the Agreement's then-executory provisions: (1) payment of the closing balance by the debtor and (2) conveyance by the Cabinet of the property deed to the debtor. Rejection, after all, prevents the contracting creditor from requiring "the bankrupt estate to specifically perform the then executory portions of the contract."  *Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n*, 826 F.2d 434, 436 (6th Cir. 1987).

The trustee, however, further contends that the deemed rejection eliminated the forfeiture clause, the only provision that granted the Cabinet an interest in the deposit at the time the debtor filed for Chapter 7 relief.  But by rejecting the Agreement, the trustee also rejected the provision

that provided the debtor's only limited, contingent interest in the deposit—a credit towards the purchase balance.  Because a trustee cannot "accept part of an unseverable executory contract [while] reject[ing] that portion of no benefit to the estate," *Walker v. Goodwin* (*In re Meadows*), 39 B.R. 538, 540 (Bankr. W.D. Ky. 1984), upon rejection of the Agreement, both the debtor and the Cabinet lost their interests in the deposit as provided by the terms of the Agreement.

Unlike the debtor, however, the Cabinet retained a stand-alone interest in the deposit based on an already executed transaction—the initial payment of the deposit.  Rejection does not require "the reversal or undoing of already executed provisions" because § 365 "does not have any impact upon the executed portions of a contract." *In re Exec. Tech. Data Sys.*, 79 B.R. 276, 282 (Bankr. E.D. Mich. 1987).  The payment of the deposit, which paid for the risk of the debtor's non-performance and reserved for the debtor the sole right to purchase the land, may be characterized as non-executory—a point conceded by the trustee—because neither party had future performance obligations related to the deposit itself.  Consequently, the deposit, as a stand-alone interest, was beyond the reach of rejection.  Section 365, including its provision for rejection, "addresses only future performance obligations of the parties." *Id*.  The trustee, therefore, is not entitled to a "reversal" or "undoing" of the payment.

Though the trustee does not have a legal, contractual interest in the deposit, he could still prevail on his § 542 turnover request if the debtor possessed an equitable interest in the deposit at the commencement of the bankruptcy proceeding.  The Cabinet's failure to deliver the deed post-petition, however, created no such equitable interest.  Because the closing date had not yet arrived, both the debtor *and* the Cabinet were performing parties at the time the debtor filed for Chapter 7 relief.  Consequently, the trustee cannot seek return of the debtor's good faith deposit based on the Cabinet's failure to deliver title post-petition.

Kentucky law provides that a vendor who is unable to render good title through no fault of his own may be required to return to the vendee any consideration previously paid. *Kramer v. Mobley*, 216 S.W.2d 930, 933 (Ky. 1949).  Likewise, "a party to an agreement to purchase property who has advanced money in part performance . . .  and then refuses to [conclude] the agreement, the other party being ready and willing to perform[,] . . .  is not entitled to recover his part of the money so advanced." *Ward Real Estate v. Childers*, 3 S.W.2d 601, 602 (Ky. 1928).

In arguing for an equitable remedy, the trustee incorrectly calculates the parties' performance at different time periods, an approach that would give unjust advantage to the debtor. The trustee argues that *prior to, and at the time of, filing the bankruptcy petition*, the debtor was a performing party. *After the bankruptcy petition was filed* and the contract was deemed rejected, the Cabinet could no longer close on the sale due to the bankruptcy proceeding. Thus, even though the Cabinet's inability to close the transaction was through no fault of its own, the debtor, as the performing party, was entitled to return of consideration paid as an equitable remedy.

If the trustee were to view both of the parties' performances at the same time, the trustee would find that either (1) both of the parties were performing prior to the initiation of bankruptcy proceedings, the relevant time period under § 541, or (2) after filing for Chapter 7 relief and rejecting the contract, the debtor—not the Cabinet—was in breach.[2] Therefore, the trustee cannot show that the debtor had an equitable interest in the deposit either prior to or after filing for relief. Because the debtor retained no legal or equitable interest in the deposit itself, and lost any limited interest in the deposit provided by the Agreement upon its deemed rejection, the good faith deposit is not property of the debtor's estate subject to § 542 turnover.

The trustee also contends that because the good faith deposit is held in escrow, it is subject to § 542 turnover. However, the good faith deposit is not held in escrow because the Agreement contemplated delivery of the funds to the grantee—the Cabinet—as opposed to a third party. The Agreement provided that the "good faith deposit" would be "*held* in a special deposit trust fund *by the Transportation Cabinet*, Division of Right of Way & Utilities, pending the arrangement of a closing date . . ." To create an escrow, "the deposit of the instrument in pursuance of such [an escrow agreement] must be absolute and *beyond control of the depositor*." *Fisk v. Peoples Liberty Bank & Trust Co.*, 570 S.W.2d 657, 659 (Ky. Ct. App. 1978) (citing 30A C.J.S. *Escrows* § 2 at 968) (emphasis added). "[T]he delivery *must be to a stranger*, and courts uniformly hold that a delivery to the grantee is an absolute delivery, and the title passes despite any agreement between them that the deed shall be effective only upon specified conditions."

---

[2]11 U.S.C. § 365(g)(1) provides: "[T]he *rejection of an executory contract* or unexpired lease of the debtor *constitutes a breach* of such contract or lease—(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, *immediately before the date of the filing of the petition*." 11 U.S.C. § 365(g)(1) (emphasis added).

*City Nat'l Bank of Cairo, Ill. v. Anderson*, 225 S.W. 361, 362 (Ky. 1920) (emphasis added); *see also Home Ins. Co. of N.Y. v. Wilson*, 275 S.W. 691, 693 (Ky. 1925).

The trustee contends that the Kentucky Finance and Administration Cabinet's control over the deposit account proves that the funds were, in fact, deposited with a third party, and thus are currently held in escrow. This argument, however, fails for two reasons. First, the Kentucky Finance and Administration Cabinet is not a third party. As the Cabinet explained,

> the Transportation Cabinet and the Kentucky Finance and Administration Cabinet are not separate parties. . . . [T]he Cabinet and the Finance Cabinet are each part of the Commonwealth of Kentucky, serving distinct functions of the executive branch. . . . Funds collected by the state and representing state money are required to be deposited in state depositories.

Appellee's Br. at 37–38 (citing Ky. Rev. Stat. Ann. § 41.070 (West 2014)).

Second, even if this Court were to accept the trustee's contention as true, the deposit still cannot be classified as held in escrow because the parties never created an escrow agreement. The Purchase Agreement did not clearly establish that a particular condition had to occur before the Cabinet would be entitled to the deposit, and it did not afford the debtor any right to a refund. To create an escrow, "the parties must actually and validly contract with respect thereto" and "the escrow agreement should be clear and definite." *Fisk*, 570 S.W.2d at 659 (internal citation omitted). Ultimately, "[t]he contract must be so complete that it only remains for the grantee or other person to perform the condition, or the event to happen, to give the instrument effect." *Id.* (internal citation omitted).

Finally, the trustee's contention that the transaction for the sale of land between the debtor and the Cabinet was a contract for deed is also meritless. The transaction was not a contract for deed because both the Agreement and the parties' actions unambiguously show that the debtor never acquired an immediate right to use or possess the land prior to filing for Chapter 7 relief. "A contract for deed is a contract for the purchase and sale of real estate under which the *purchaser acquires the immediate right to possession* of the real estate and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price." Restatement (Third) of Property: Mortgages § 3.4(a) (1997) (emphasis added). "Courts should not readily convert an earnest money contract into a contract for deed." *Id.* § 3.4 cmt. a.

The judgment of the district court is AFFIRMED.